[No. B155620. Second Dist., Div. Four. May 8, 2002.]

KOLLANDER CONSTRUCTION, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
DIONICIA ALVAREZ, Real Party in Interest.

**COUNSEL**

Benjamin L. Crumpacker and Howard E. Hamann for Petitioners.

No appearance for Respondent.

Mayra M. Fornos; Esner & Chang, Andrew N. Chang and Stuart B. Esner for Real Party in Interest.

**OPINION**

**HASTINGS, J.**—We issued an order to show cause in this original proceeding and requested briefing on whether Code of Civil Procedure section 1008 is unconstitutional to the extent that it purports to deprive trial courts of their inherent power to reconsider interim rulings.[1] We agree with Division Seven of this district which held in *Darling, Hall & Rae v. Kritt* (1999) 75 Cal.App.4th 1148, 1156 [89 Cal.Rptr.2d 676] that trial courts retain their inherent power notwithstanding the language of section 1008 which provides that compliance with its provisions is jurisdictional. But, we conclude we need not reach the constitutional issue in this case because the facts support the trial court's finding that new circumstances arose to support reconsideration of the trial court's denial of a section 473 motion to set aside a dismissal.

BACKGROUND

The underlying action is one for personal injury brought by real party in interest Dionicia Alvarez. The action was filed on behalf of Ms. Alvarez by Attorney Mayra M. Fornos and alleged that Ms. Alvarez was injured when she fell into an excavation made by defendants Century Communications Corporation and Multi-Cable, Inc., when they were repairing or installing cable service at a specified location.

After the action had been filed, Fornos learned from Century that the subcontractor which had dug the excavation was not Multi-Cable but was

---

[1] All further statutory references will be to the Code of Civil Procedure unless otherwise noted.

either All American Cablevision or petitioners, Kollander Construction, Inc., Steve Chinelli, and Odelia Chinelli. She added these parties to the action as Doe defendants. Petitioners answered the complaint and cross-complained against All American. Shortly after petitioners had answered the complaint, Fornos's paralegal, Debbie Elias, dismissed petitioners from the action, with prejudice. In July, Fornos turned the matter over to Attorney Malcolm Heib, who was of counsel to her firm, because of illness in her family. Fornos later learned from Heib that Century had documentation implicating Kollander in the case. On August 20, 2001, counsel for Century took the depositions of Steve and Odelia Chinelli. At these depositions it was discovered that Kollander was present on the accident site on the date in question. Fornos called counsel for petitioners and requested that he stipulate to set aside the dismissal. When he refused, she immediately filed a motion to set aside the dismissal pursuant to section 473, based on mistake.

The motion was supported by the declaration of Fornos, which set out the above facts. On the issue of mistake, she declared as follows: "During the week of June 4, 2001, declarant received a dismissal from Kollander Construction and the Chinellis of their cross-complaint. It was, however, as to Multi-Cable only, who had previously established that they were not present or involved in the subject incident. Unfortunately, through mistake and inadvertence, declarant dismissed Kollander and the Chinellis. Of importance is the fact that despite the issuance of a dismissal as to these entities, declarant believed that same was done *without prejudice* as is referenced in our August 10 correspondence to [Gene McKenzie, counsel for petitioners] concerning the preparation of a release with regard to these defendants. A true and correct copy of said correspondence is attached hereto as Exhibit '1.'" (Italics in original.) The letter addresses changes to be made in a proposed release in favor of petitioners. In connection with the dismissal, it states that the release should reflect: "Plaintiff has filed a dismissal as to the released parties, which dismissal is without prejudice and without cost to the released parties."

In opposition, petitioners submitted three and one-half pages of argument, neither citing nor discussing legal authority, the thrust of which was that real party in interest had failed to establish that the dismissal resulted from mistake.

McKenzie also provided a declaration in opposition. The declaration suggests that McKenzie initially believed dismissal of his clients had been a mistake. On June 14, 2001, after he received a copy of the dismissal in the mail, he telephoned and spoke with Debbie Elias. He asked whether the dismissal of his clients had been a mistake. Elias said she would check with

Fornos. The next day, Elias told McKenzie that she had confirmed with Fornos that the dismissal was not a mistake. Notwithstanding this confirmation, in July he served discovery on real party in interest. In return, he received a letter from Elias reminding him that his clients had been dismissed from the action. At the depositions of the Chinellis, McKenzie asked Heib why the dismissal had been filed. Heib did not know and said he would check into it. The week following, Fornos telephoned McKenzie and asked that he stipulate to setting aside the dismissal. He refused and told Fornos that he had spoken with Elias in June and Elias had confirmed that the dismissal had not been a mistake.

In reply to the opposition, Fornos filed a declaration of Elias. Elias states that she prepared the request for dismissal at Fornos's instruction, left it on her desk for her signature, and found it signed a few days later. On June 22, 2001, Elias spoke to Fornos by telephone, informed her of McKenzie's request for a reason for the dismissal, and relayed his request for a declaration to enable him to file a motion for good faith settlement. Fornos gave no reason for the dismissal, saying that the dismissal spoke for itself. She stated that she told McKenzie that she did not know why Fornos filed the dismissal.

The section 473 motion came on for hearing on October 1, 2001. During argument, petitioner's counsel told the court he had not yet read the Elias declaration and requested an opportunity to respond to it. The court granted the request and took the matter under submission pending petitioners' response. On October 5, petitioners filed a 75-page response, which included points and authorities, this time with citation to and discussion of legal authorities, an additional declaration by McKenzie, and various supporting exhibits.

On October 9, 2001, the trial court issued a three-page minute order denying real party in interest's motion and explaining the court's reasoning, with numerous references to petitioners' newly submitted authorities and to McKenzie's supplemental declaration.

Within 10 days, Fornos filed a motion for reconsideration. She argued that the initial opposition filed by petitioners to her section 473 motion had presented nothing of substance and that she had been denied the right to effectively rebut the new argument and facts presented in the 75-page response filed by petitioners. Petitioners filed opposition and argument was heard and the matter submitted on November 13, 2001. The next day the trial court issued a minute order granting reconsideration and then granting the section 473 motion. The court expressly found that the motion for reconsideration had been based upon "new circumstances," the filing of the 75-page response on October 5, 2001.

## DISCUSSION

■ Section 1008, subdivision (a), provides in relevant part: "When an application for an order has been made to a judge, or to a court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order."

Prior to 1992, section 1008 allowed a motion for reconsideration solely upon "an alleged different state of facts." (Stats. 1978, ch. 631, § 2 p. 2084; see also *Imperial Beverage Co. v. Superior Court* (1944) 24 Cal.2d 627, 634 [150 P.2d 881].) Section 1008 purported to be neither jurisdictional nor exclusive. (*Imperial Beverage Co.*, at pp. 633-634; *Salowitz Organization, Inc. v. Traditional Industries, Inc.* (1990) 219 Cal.App.3d 797, 807-808 [268 Cal.Rptr. 493].) The trial court retained its inherent power to reconsider interim rulings. (*Greenberg v. Superior Court* (1982) 131 Cal.App.3d 441, 445 [182 Cal.Rptr. 466].)

Section 1008 was amended in 1992 and added the language "new or different facts, circumstances, or law" as grounds for reconsideration. (Code Civ. Proc., § 1008, subd. (a) as amended by Stats. 1992, ch. 460, § 4, p. 1832.) The purpose of the amendment was to reduce the number of motions for reconsideration by making the diligence requirements of the statute stricter, and by making the statutory procedure exclusive and jurisdictional. (*Baldwin v. Home Savings of America* (1997) 59 Cal.App.4th 1192, 1199 [69 Cal.Rptr.2d 592].) To effect this purpose, subdivision (e) was added to section 1008: "This section specifies the court's *jurisdiction* with regard to applications for reconsideration of its orders and renewals of previous motions, and applies to all applications to reconsider any order of a judge or court, or for the renewal of a previous motion, whether the order deciding the previous matter or motion is interim or final. *No application to reconsider any order or for the renewal of a previous motion may be considered by any judge or court unless made according to this section.*"[2] (Italics added.)

Without reaching the question of whether these new restrictions constitutionally impinged upon the inherent power of a trial court to reconsider its

---

[2]Although the 1992 amendment expressly applies to *applications* for reconsideration, and therefore not to reconsideration sua sponte, section 1008, subdivisions (c) and (f) purport to limit the court's reconsideration of an interim ruling on its own motion to instances where it determines that there has been a change of law that warrants reconsideration, but only so long as the new or different law is not a later enacted statute without a retroactive application.

interim rulings, several appellate courts have enforced the expressed intent of the Legislature to impose jurisdictional and exclusive procedures on motions for reconsideration. (See *Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 669-670 [73 Cal.Rptr.2d 242]; *Baldwin v. Home Savings of America, supra,* 59 Cal.App.4th at p. 1200; *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 686 [68 Cal.Rptr.2d 228]; *Wilson v. Science Applications Internat. Corp.* (1997) 52 Cal.App.4th 1025, 1031 [60 Cal.Rptr.2d 883]; *Lucas v. Santa Maria Public Airport Dist.* (1995) 39 Cal.App.4th 1017, 1027 [46 Cal.Rptr.2d 177]; *Gilberd v. AC Transit* (1995) 32 Cal.App.4th 1494, 1499 [38 Cal.Rptr.2d 626]; and *Morite of California v. Superior Court* (1993) 19 Cal.App.4th 485, 490-491 [23 Cal.Rptr.2d 666].)

■ A court's inherent powers are neither confined by nor dependent on statute. (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 267 [279 Cal.Rptr. 576, 807 P.2d 418].) The inherent power to reconsider interim rulings is derived from the Constitution. (*Id.* at pp. 266-267.) Under article VI, section 1 of the California Constitution, "[t]he judicial power of this State is vested in the Supreme Court, courts of appeal, superior courts, and municipal courts, all of which are courts of record."

The California Constitution also provides for two other branches of government, the legislative branch and the executive branch. (See Cal. Const., art. IV, § 1 [legislative]; Cal. Const., art. V, § 1 [executive].) ■ Separate powers are divided coequally among the three, with each branch vested with certain "core" functions that may not be usurped by another branch. (*People v. Bunn* (2002) 27 Cal.4th 1, 14 [115 Cal.Rptr.2d 192, 37 P.3d 380]; Cal. Const., art. III, § 3.) The core power of the judiciary is "to resolve 'specific controversies' between parties." (*People v. Bunn, supra,* 27 Cal.4th at p. 15.) The legislative branch is granted the "far-reaching power to weigh competing interests and determine social policy." (*Ibid.*)

"Notwithstanding these principles, it is well understood that the branches share common boundaries [citations]. [¶] Indeed, the 'sensitive balance' underlying the tripartite system of government assumes a certain degree of mutual oversight and influence. [Citations.]" (*People v. Bunn, supra,* 27 Cal.4th at p. 14.) Thus, the Legislature does not necessarily violate the separation of powers doctrine when it legislates with regard to an inherent judicial power or function. (*Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 57 [51 Cal.Rptr.2d 837, 913 P.2d 1046].) "The . . . legislature may put reasonable restrictions upon constitutional functions of the courts provided they do not defeat or materially impair the exercise of those functions." (*Brydonjack v. State Bar* (1929) 208 Cal. 439, 444 [281 P. 1018, 66 A.L.R. 1507].)

It is a core function of the courts to ensure the orderly and effective administration of justice. (*Walker v. Superior Court, supra,* 53 Cal.3d at pp. 266-267.) " 'One of the powers which has always been recognized as inherent in courts, which are protected in their existence, their powers, and jurisdiction by constitutional provisions, has been the right to control [their] order of business, and to so conduct the same that the rights of all suitors before them may be safeguarded. This power has been recognized as judicial in its nature, and as being a necessary appendage to a court organized to enforce rights and redress wrongs.' " (*Lorraine v. McComb* (1934) 220 Cal. 753, 756 [32 P.2d 960].) The inability to correct an error prior to trial and appeal is " 'a serious impediment to a fair and speedy disposition of causes.' " (*De La Beckwith v. Superior Court* (1905) 146 Cal. 496, 500 [80 P. 717].) "A court could not operate successfully under the requirement of infallibility in its interim rulings. Miscarriage of justice results where a court is unable to correct its own perceived legal errors, . . ." (*People v. Castello* (1998) 65 Cal.App.4th 1242, 1249 [77 Cal.Rptr.2d 314].)

More recently, Division Seven of this district considered the separation of powers doctrine, and found no constitutional invalidity after construing section 1008 as not affecting the court's ability to reevaluate its own interim rulings on its own motion. (*Darling, Hall & Rae v. Kritt, supra,* 75 Cal.App.4th at p. 1156.) The court found the line of cases holding section 1008 jurisdictional to be inapplicable, reasoning that section 1008, subdivision (a) applies only to *applications* made to the court *by parties,* not only by its very terms, but also because the intent of the Legislature was "to conserve the court's resources by constraining litigants who would attempt to bring the same motion over and over." (*Darling, Hall & Rae v. Kritt, supra,* 75 Cal.App.4th at p. 1157.) The court also explained that the statute does not restrict reconsiderations sua sponte, because "these same judicial resources would be wasted if the court could not, on its own motion, review and change its interim rulings"; and such a restriction, therefore, would be an impairment of the court's powers prohibited by the separation of powers doctrine of the California Constitution. (*Ibid.*)

While we agree with Division Seven that judicial resources would be wasted if the court could not review and change its interim rulings, we do not see how the manner of bringing erroneous rulings to the court's attention would in any way mitigate that waste. If section 1008 can be said to create an unreasonable impediment to the orderly and effective administration of justice, it can make no difference whether the error is brought to the attention of the court by the parties or by the insight of the judge alone. "Whether the trial judge has an unprovoked flash of understanding in the middle of the night or is prompted to rethink an issue by the stimulus of a

motion is 'constitutionally immaterial' to the limitation on the power of the Legislature to regulate the judiciary. [Citation.]" (*Remsen v. Lavacot* (2001) 87 Cal.App.4th 421, 427 [104 Cal.Rptr.2d 612], quoting Miller & Horton, *About Face* (Mar. 2000) 23 L.A. Law. 43, 49.)

Division One of the Fourth District Court of Appeal has suggested in dictum that the language of section 1008 should be read as directory only, to the extent that it could be interpreted as unconstitutionally restricting more than applications made by the parties. (See *People v. Castello, supra,* 65 Cal.App.4th at pp. 1247-1250.)[3]    ▉    We agree with that court that when a statute is found to violate the separation of powers doctrine, it should not be construed as mandatory. (See *Lorraine v. McComb, supra,* 220 Cal. at p. 757.) Statutes should be interpreted to preserve their constitutionality, if possible. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

On the other hand, language of a statute may not be disregarded in defiance of the clear intent of the Legislature. (See *Razeto v. City of Oakland* (1979) 88 Cal.App.3d 349, 351 [151 Cal.Rptr. 791].) Thus, if we read language into the statute, we must "steer clear of 'judicial policymaking' in the guise of statutory reformation, and . . . avoid encroaching on the legislative function in violation of the separation of powers doctrine." (*Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 661 [47 Cal.Rptr.2d 108, 905 P.2d 1248].) We may reform (or "rewrite") a statute to render it constitutional only "when we can say with confidence that (i) it is possible to reform the statute in a manner that closely effectuates policy judgments clearly articulated by the enacting body, and (ii) the enacting body would have preferred the reformed construction to invalidation of the statute." (*Kopp v. Fair Pol. Practices Com., supra,* 11 Cal.4th at p. 661.)

▉    Thus, the question with regard to section 1008 becomes whether the Legislature clearly articulated its policy judgment when it amended the statute by adding the jurisdictional language of subdivision (e). If so, did the Legislature clearly re-articulate its policy judgment when it amended section 1008 in 1998 to specify that it applies to *all applications* for interim orders? (See Code Civ. Proc., § 1008, subd. (g).)

If we were to answer those questions in the affirmative, yet construe section 1008 as directory only with regard to applications made by the parties to reconsider an interim ruling, we would be rewriting the statute in defiance of express policy judgments clearly articulated by the Legislature.

---

[3]*Castello* was a criminal case, and the court held that section 1008 does not extend to criminal cases. (*People v. Castello, supra,* 65 Cal.App.4th at pp. 1246-1247.)

The result would be a violation on our part of the separation of powers doctrine. (See *Kopp v. Fair Pol. Practices Com.*, *supra*, 11 Cal.4th at p. 661.) Since the Constitution would not allow such a result, our only recourse would be to invalidate the statute. (See *ibid.*; Cal. Const., art. III, § 3.)

■ At the same time, however, long-established policy obliges us not to "reach out and unnecessarily pronounce upon the constitutionality of any duly enacted statute." (*Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 65 [195 P.2d 1].) We are constrained to avoid constitutional questions where other grounds are available and dispositive of the issues of the case. (E.g., *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230 [45 Cal.Rptr.2d 207, 902 P.2d 225].) ■ Here, invalidation of section 1008 is unnecessary because the trial court concluded new circumstances were presented which supported the grant of the motion for reconsideration. We agree.

Litigants have the right to a full and fair hearing on "critical pretrial matters." (*Titmas v. Superior Court* (2001) 87 Cal.App.4th 738, 742 [104 Cal.Rptr.2d 803].) At the hearing on the section 473 motion, the trial court granted petitioners an opportunity to respond to the Elias declaration. Instead, petitioners filed a complete new set of points and authorities and a new declaration, which addressed not only the Elias declaration but also facts originally addressed by Fornos in her declaration filed with the original motion. Petitioners also raised new issues. Instead of relying on their original argument that the dismissal was not a mistake, petitioners urged that a mistake was made, but it was inexcusable, and that real party in interest's showing was insufficient to establish excusable neglect. McKenzie's supplemental declaration was supported with 12 new exhibits, including excerpts from depositions taken prior to the dismissal, showing that Kollander Construction was the successor to All American Cablevision, and a letter showing that it was Kollander who was on the job on that date. The court's order denying the section 473 motion contained numerous references to petitioners' newly submitted authorities and to their counsel's supplemental declaration.

While it was within the court's discretion to permit petitioners to file a response to Elias's declaration (*Alvak Enterprises v. Phillips* (1959) 167 Cal.App.2d 69, 74 [334 P.2d 148]), the length and breadth of the response far exceeded the scope of the anticipated filing. Parties should be given an opportunity to brief the new issues that arise after submission, "so that the ensuing order does not issue like a 'bolt from the blue out of the trial judge's chambers.' [Citations.]" (*Monarch Healthcare v. Superior Court* (2000) 78 Cal.App.4th 1282, 1286 [93 Cal.Rptr.2d 619].) Indeed, a motion for reconsideration is the appropriate response to the denial of that opportunity. (*Id.* at pp. 1286-1287.)

Petitioners do not contend that the trial court abused its discretion in granting the section 473 motion, but contend that we should grant the petition, because they realized while preparing it that the signature on Fornos's declarations does not appear to be the same as that on the complaint and the dismissal with prejudice. ■ A party may not object to the genuineness of a signature for the first time in the reviewing court. (See *Burnett v. Lyford* (1892) 93 Cal. 114, 117 [28 P. 855].)

Petitioners assert that because their failure to object was inadvertent, they may raise the issue for the first time here. They rely on *Clark v. Bradley* (1951) 106 Cal.App.2d 537 [235 P.2d 439], but *Clark* merely held that a new trial was properly granted when all counsel and the court did not realize that the evidence had been inadvertently offered and admitted. (See 106 Cal.App.2d at pp. 544-545.) Since it does not appear that petitioners' inadvertence was shared by real party in interest or the trial court, *Clark* is inapplicable, and any objection to Fornos's signature has been waived.

## DISPOSITION

The petition for writ of mandate or other extraordinary relief is denied. The alternative writ, having served its purpose, is discharged, and the temporary stay order is lifted upon finality of this decision. Real party in interest shall have her costs.

Vogel (C. S.), P. J., and Curry, J., concurred.