[No. B143295. Second Dist., Div. Three. June 10, 2002.]

CHARLEEN CASE, Plaintiff and Appellant, v.
LAZBEN FINANCIAL COMPANY et al., Defendants and Respondents.

### COUNSEL

Law Offices of F. James Feffer, F. James Feffer, Catherine M. Adams, Melody Heinemann Dosch and Mark C. Calahan for Plaintiff and Appellant.

Law Offices of Debra L. Korduner and Debra L. Korduner for Defendants and Respondents.

### OPINION

**ALDRICH, J.**—The issue squarely presented in this appeal is whether Code of Civil Procedure section 1008[1] restricts a trial court, on its own motion, from reconsidering one of its interim orders. For the reasons set forth herein, we conclude that a trial court can sua sponte reconsider its own interim orders irrespective of section 1008. If interpreted to eliminate a trial court's jurisdiction in this regard, section 1008 would materially impair and defeat a core function of the judiciary, the power to resolve specific controversies between parties, in violation of the separation of powers doctrine. Therefore, section 1008 must be interpreted as restricting only the ability of litigants to bring motions for reconsideration.

Plaintiff and appellant Charleen Case appeals from the trial court's order dismissing her complaint against defendants and respondents Lazben Financial Company, Benjamin Deutsch, and Lawrence Deutsch (hereinafter respondents) for failure to prosecute. The trial court initially denied respondents' motion to dismiss, but sua sponte reconsidered the issue and granted

---

[1]All further undesignated statutory references are to the Code of Civil Procedure.

the motion. Case asserts that the trial court exceeded its jurisdiction by reconsidering its order when the prerequisites of section 1008 were not met. We conclude the trial court did not exceed its jurisdiction in reconsidering its order and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Case's action against respondents.*

On January 25, 1991, Case filed a 19-count complaint against respondents and 13 other defendants, including City Thrift and Loan Association (City Thrift). The complaint included causes of action for fraud, negligent misrepresentation, breach of fiduciary duty, breach of contract, rescission, restitution, and violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1962 (c)), all arising from Case's investments in various real estate and other ventures. Trial was set for August 23, 1993.

On July 9, 1993, the California Commissioner of Corporations closed City Thrift. On July 15, 1993, the Federal Deposit Insurance Corporation (FDIC), as receiver for City Thrift, removed the action to the United States District Court for the Central District of California. On June 15, 1994, the parties stipulated in federal court to dismissal with prejudice of all claims against the FDIC; to dismissal with prejudice of all claims brought against the remaining defendants under RICO; and to remand of the pendent state claims to the Los Angeles County Superior Court. On June 16, 1994, Federal District Judge Manuel L. Real signed and filed the stipulation and order dismissing and remanding the case. The order remanding the case was entered in the federal docket on June 21, 1994; however, apparently due to a clerical error, it was not mailed to the superior court at that time.

According to the representations of Case's counsel in the opposition to respondents' motion to dismiss, in early 1997, Beigel & Sandler, P.C., the law firm representing Case at that time, liquidated. According to Case, in the fall of 1997, a former Beigel & Sandler associate took over representation of Case's claims. He discovered that the federal court's order remanding the matter had never been mailed to the superior court, and requested that it be forwarded to the superior court. On October 30 and December 5, 1997, the federal district court mailed certified copies of the remand order to the superior court.

A status conference was held in Los Angeles County Superior Court on January 20, 2000. Respondents indicated they would file motions to dismiss for failure to prosecute, and requested a March hearing date. At Case's

counsel's request, due to family medical concerns, the hearing on the motion to dismiss was set for April 5, 2000. On February 18 and March 9, 2000, respondents filed motions for discretionary and mandatory dismissal pursuant to sections 583.410, 583.420, 583.310, and 583.360. Case did not file oppositions. On the hearing date of April 5, 2000, Case filed an ex parte application requesting a continuance. The trial court granted the continuance to April 28, 2000, and indicated it was inclined to grant the motion to dismiss. Case subsequently filed a consolidated opposition to both motions.

### 2. *Rulings on respondents' motions to dismiss.*

On April 28, 2000, the trial court heard and denied respondents' motions to dismiss.[2] As to the discretionary motion to dismiss (§ 583.410), the court noted that the parties had litigated the matter for two and one-half years prior to the removal to federal court; discovery had been completed, including depositions; a discovery cutoff date had been in effect; and defendants' motions for summary judgment had been pending when the case was removed. The court reasoned, "It's not a kind of case where plaintiff had done nothing from the outset of the action." The court stated it was distressed about the age of the case, but found "[t]here appears to be some failure by [the] judicial system folks here which . . . at least primarily [is] not attributable to the parties." The court set a trial date of May 10, 2000, noting that the "five-year-rule" would run on that date. The court expressed concern that trial would commence in 12 days and stated, "[t]his is not a case that makes me real comfortable either way." Respondents' counsel asserted her understanding that the matter was to be tried to the court, rather than a jury. She requested that plaintiff's counsel identify which remaining causes of action would actually be tried.

At a May 3, 2000 conference, Case's counsel estimated a two- to three-week jury trial; stated that he anticipated calling up to 25 witnesses; and indicated that tentatively he intended to proceed on four causes of action. The court stated, "I am actively reconsidering my denial of the motions to dismiss because this case—to slam anybody to trial, on that kind of trial, under these circumstances, underscores the motions that were made and suggests to this court that the ruling was improvident." It explained it was "increasingly uncomfortable" with its denial of respondents' motion and expressed concern that there was insufficient time to prepare for trial. The court indicated it was anxious to minimize prejudice to the defendants.

On May 5, 2000, Case's counsel indicated plaintiff would proceed on seven causes of action; intended to call approximately 20 witnesses; and

---

[2] The trial court's denial of the motion for mandatory dismissal is not at issue on appeal.

estimated trial would require 15 days. The court again expressed concern about its denial of the motion to dismiss: "What we have here is because of this court's ruling, unmindful as I was apparently of the consequences thereof, we have put ourselves in the position where we have to do in a week that which most lawyers do in a year, and that is prepare a somewhat sophisticated case for trial." It explained it was "not trying to manufacture a way out." Defense counsel argued that the lapse of time and brief period remaining to prepare for trial had irreversibly prejudiced defendants. The trial court indicated it wished to revisit its denial of the motions and placed them back on calendar on its own motion. It opined, "everything that has transpired today has demonstrated the . . . borderline stupidity of what this court did in not recognizing that this case is a textbook on why enough is enough and the case should have been dismissed."

During a May 8, 2000 conference, Case argued that reconsideration was improper because section 1008 deprived the trial court of jurisdiction to reconsider. After hearing argument from both parties, the trial court reconsidered and reversed its prior order and granted respondents' motion to dismiss. The trial court articulated the basis for its grant of the motion in a written order, which explained, among other things, that: the plaintiff was not blameless for the delay in prosecuting the case; the consequences of the trial court's ruling on the motion to dismiss appeared much greater than when the ruling was made; and a "tremendous burden" was being imposed on the defendants, who were being required to prepare for trial on 12 days' notice. The order continued, "this is the [worst] case of a 'rush to judgment' that the Court has ever seen and it is clear that justice cannot be done by proceeding in the manner required as a result of the Court's Order of April 28, 2000; . . . the Court's Order of April 28, 2000 denying defendants' Motion to Dismiss was wrongly made and the Court believes that it not only has the right, but that it has the duty, to correct it . . . ." On July 20, 2000, appellant filed her notice of appeal.

### DISCUSSION

*1. Section 1008 did not deprive the trial court of jurisdiction to sua sponte reconsider its ruling on the motion to dismiss.*

■ Case contends that section 1008, as amended by the Legislature in 1992 and 1998, precluded the trial court from reconsidering its order. She asserts that section 1008 is jurisdictional and prescribes the exclusive procedural vehicle by which a court may reconsider its rulings. Here, she asserts, section 1008's requirements were not met because the trial court's reconsideration of its order was not based upon a change in the law, as

required by section 1008, subdivision (c). Thus, she contends, the trial court acted in excess of its jurisdiction. We conclude that the trial court had inherent authority, derived from the California Constitution, to reconsider its earlier ruling, and its jurisdiction was not truncated by section 1008.

 a. *Section 1008.*

Section 1008 provides that parties who wish to move for reconsideration of an order must do so within 10 days after service of notice of entry of the order, and the request must be based upon new or different facts, circumstances, or law. (§ 1008, subds. (a), (b).)[3] Section 1008, subdivision (c) provides that, "If a court at any time determines that there has been a change of law that warrants it to reconsider a prior order it entered, it may do so on its own motion and enter a different order." Subdivision (e) provides that section 1008 "specifies the court's jurisdiction with regard to applications for reconsideration of its orders and renewals of previous motions, and applies to all applications to reconsider any order of a judge or court, or for the renewal of a previous motion, whether the order deciding the previous matter or motion is interim or final." Subdivision (g) reiterates that the statute applies to interim orders.

---

[3]Section 1008 provides: "(a) When an application for an order has been made to a judge, or to a court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order. The party making the application shall state by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown. [¶] (b) A party who originally made an application for an order which was refused in whole or part, or granted conditionally or on terms, may make a subsequent application for the same order upon new or different facts, circumstances, or law, in which case it shall be shown by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown. For a failure to comply with this subdivision, any order made on a subsequent application may be revoked or set aside on ex parte motion. [¶] (c) If a court at any time determines that there has been a change of law that warrants it to reconsider a prior order it entered, it may do so on its own motion and enter a different order. [¶] (d) A violation of this section may be punished as a contempt and with sanctions as allowed by Section 128.7. In addition, an order made contrary to this section may be revoked by the judge or commissioner who made it, or vacated by a judge of the court in which the action or proceeding is pending. [¶] (e) This section specifies the court's jurisdiction with regard to applications for reconsideration of its orders and renewals of previous motions, and applies to all applications to reconsider any order of a judge or court, or for the renewal of a previous motion, whether the order deciding the previous matter or motion is interim or final. No application to reconsider any order or for the renewal of a previous motion may be considered by any judge or court unless made according to this section. [¶] (f) For the purposes of this section, an alleged new or different law shall not include a later enacted statute without a retroactive application. [¶] (g) This section applies to all applications for interim orders."

Section 1008 was amended in 1992 to add, inter alia, the current subdivisions (c) and (e); it was amended again in 1998 to add the current subdivision (g). (Stats. 1992, ch. 460, § 4, p. 1833; Stats. 1998, ch. 200, § 2; see also *Kollander Construction, Inc. v. Superior Court* (2002) 98 Cal.App.4th 304, 310, 313-314 [119 Cal.Rptr.2d 614] (*Kollander*).) Prior to the amendments, section 1008 did not purport to be either "jurisdictional [or] exclusive." (*Kollander, supra,* 98 Cal.App.4th at p. 310.)

Amended section 1008 has generated a considerable body of law, and some disagreement, in the appellate courts. Some courts, without considering the constitutionality of section 1008, have concluded the statute is jurisdictional and prescribes the only procedural mechanism for reconsideration of a trial court's interim orders. For example, in *Morite of California v. Superior Court* (1993) 19 Cal.App.4th 485 [23 Cal.Rptr.2d 666] (*Morite*), a judge set an action for trial after another judge had ordered the trial stayed, despite the absence of the procedural prerequisites of section 1008. *Morite* held the trial court had acted in excess of its jurisdiction. (*Morite*, at p. 488.) It explained that section 1008 "denies trial courts jurisdiction to reconsider, modify, amend or revoke their prior orders, whether final or interim, except pursuant to the procedure set forth in section 1008." (*Morite*, at p. 487.) "Section 1008 governs motions for reconsideration, by parties or the court itself. It is the exclusive means for modifying, amending or revoking an order. That limitation is expressly jurisdictional." (*Morite*, at p. 490.) In support of its conclusion, *Morite* pointed to the legislative addition of subdivision (e) in 1992. (*Morite*, at pp. 491-492.)

Like *Morite,* the First Appellate District has repeatedly held that section 1008 is jurisdictional and governs the trial court's reconsideration of interim orders. (E.g., *Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 669-670 [73 Cal.Rptr.2d 242] [trial court abused its discretion by granting defendant's motion for reconsideration of attorneys' fee award because motion was not based upon new facts or law]; *Baldwin v. Home Savings of America* (1997) 59 Cal.App.4th 1192, 1197-1201 [69 Cal.Rptr.2d 592] [trial court acted in excess of its jurisdiction by granting defendant's motion for reconsideration of attorneys' fee award; defendant was not diligent and could have presented law to court in initial motion]; *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 685-691 [68 Cal.Rptr.2d 228] [reconsideration improper where mistakenly omitted evidence did not constitute new or different facts within meaning of § 1008, which is exclusive and jurisdictional]; *Crotty v. Trader* (1996) 50 Cal.App.4th 765, 770-771 [57 Cal.Rptr.2d 818] [under § 1008, a court may grant reconsideration only if presented with new facts or law; it may not reevaluate, reanalyze, or correct judicial error in a motion for reconsideration]; *Gilberd v. AC Transit* (1995)

32 Cal.App.4th 1494, 1499 [38 Cal.Rptr.2d 626] ["[s]ection 1008 governs reconsideration of court orders whether initiated by a party or the court itself"].)

Other courts have rejected this view, holding that because a court has the constitutionally derived inherent power to reconsider its interim decisions, section 1008 can only be understood to apply to motions for reconsideration brought by litigants, and is inapplicable to a court's sua sponte reconsideration of its own interim orders. In *Darling, Hall & Rae v. Kritt* (1999) 75 Cal.App.4th 1148 [89 Cal.Rptr.2d 676], the trial court initially denied the plaintiff's summary judgment motions. Thereafter it vacated its earlier rulings based upon its reconsideration of papers previously filed in connection with the motions. (*Id.* at p. 1153.) On appeal, the defendant asserted the trial court had acted in excess of its jurisdiction. The appellate court considered and found inapplicable the First District line of cases holding section 1008 was jurisdictional. It reasoned, "section 1008 does not govern the court's ability, on its own motion, to reevaluate its own interim rulings. [Citation.] Instead, the trial court retains the inherent authority to change its decision at any time prior to the entry of judgment. [Citation.] Section 1008 is designed to conserve the court's resources by constraining litigants who would attempt to bring the same motion over and over. On the other hand, these same judicial resources would be wasted if the court could not, on its own motion, review and change its interim rulings. [Citation.] Therefore, the only requirement of the court is that it exercise 'due consideration' before modifying, amending, or revoking its prior orders. [Citation.]" (*Darling*, at pp. 1156-1157.)

*People v. Castello* (1998) 65 Cal.App.4th 1242, 1245 [77 Cal.Rptr.2d 314] came to a similar conclusion. In *Castello,* a criminal matter, the question was whether a trial court could reconsider its decision that a prior conviction qualified as a "strike" under the "Three Strikes" law. The court concluded that section 1008 was inapplicable in criminal actions. (*Castello*, at p. 1247.) In dicta, *Castello* further noted that courts have wide, inherent powers to ensure the orderly administration of justice, including the authority to rehear or reconsider rulings. (*Id.* at pp. 1247-1248.) These inherent powers, *Castello* reasoned, are derived from the California Constitution. (*Ibid.*) Moreover, section 1008's express terms, as well as uncodified expressions of legislative intent, suggested to *Castello* that section 1008 "governs only a litigant's ability to renew a motion or advance an application, not the court's inherent power to reconsider its own interim rulings." (*Castello*, at pp. 1248-1249 & fn. 5.) *Castello* therefore reasoned that "if the language of section 1008 imports anything further, it must be treated as directory only." (*Id.* at p. 1249, fn. omitted; see also *In re Jamika W.* (1997) 54 Cal.App.4th 1446,

1450 [63 Cal.Rptr.2d 513] [§ 1008 did not preclude trial court from correcting its own ruling where court was not acting on motion for reconsideration]; *Bernstein v. Consolidated American Ins. Co.* (1995) 37 Cal.App.4th 763, 774 [43 Cal.Rptr.2d 817], overruled on another point in *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 841, fn. 13 [88 Cal.Rptr.2d 366, 982 P.2d 229] [reconsideration upheld because "court was not entertaining a motion [by a party] for reconsideration of the prior ruling, but was correcting an erroneous ruling on its own motion"; until entry of judgment, court retained power to change its decision, despite § 1008].)

*Remsen v. Lavacot* (2001) 87 Cal.App.4th 421 [104 Cal.Rptr.2d 612] found section 1008 did not restrict a court's power to reconsider, but rejected the distinction between a trial court's sua sponte reconsideration of its own rulings and motions brought by litigants. There, the trial court had initially ruled that the beneficiaries of a trust were entitled to interest on their bequests. (*Remsen*, at p. 424.) After the trustees filed a motion for reconsideration, the court modified its prior order and held the beneficiaries were not entitled to interest. (*Id.* at p. 425.) On appeal, the beneficiaries argued that section 1008 deprived the trial court of jurisdiction to reconsider its original order. *Remsen* acknowledged that section 1008, subdivision (e) made the statute applicable to both interim and final orders, and subdivision (c) limited the court's sua sponte power to cases in which there had been a change in the law. (*Remsen*, at p. 426.) It reasoned, "[n]otwithstanding section 1008, however, the court retained its inherent jurisdiction to modify interim orders." (*Ibid.*) "[T]he court's inherent power to correct its own rulings is based on the California Constitution and cannot be impaired by statute." (*Ibid.*) *Remsen* found it immaterial whether the trial court was acting sua sponte or was reconsidering its prior decision in response to a litigant's motion. "Whether the trial judge has an unprovoked flash of understanding in the middle of the night or is prompted to rethink an issue by the stimulus of a motion is 'constitutionally immaterial' to the limitation on the power of the Legislature to regulate the judiciary. [Citation.]" (*Id.* at p. 427; see also *Gailing v. Rose, Klein & Marias* (1996) 43 Cal.App.4th 1570, 1579 [51 Cal.Rptr.2d 381] [§ 1008 is not jurisdictional; "trial court has broad discretion to hear a renewed motion, even if prerequisites of the section are not met"].)

Most recently, *Kollander, supra,* 98 Cal.App.4th 304, addressed section 1008. *Kollander* agreed that trial courts retain their inherent power to reconsider interim rulings, notwithstanding section 1008. (*Kollander*, at pp. 307-308.) *Kollander* rejected the notion that section 1008 was intended to apply only to applications brought by the parties. "Although the 1992 amendment expressly applies to *applications* for reconsideration, and therefore not to reconsideration sua sponte, section 1008, subdivisions (c) and (f)

purport to limit the court's reconsideration of an interim ruling on its own motion to instances where it determines that there has been a change of law that warrants reconsideration . . . ." (*Kollander*, at p. 310, fn. 2.) Moreover, *Kollander* found such a distinction irrelevant for constitutional purposes: "While we agree with Division Seven that judicial resources would be wasted if the court could not review and change its interim rulings, we do not see how the manner of bringing erroneous rulings to the court's attention would in any way mitigate that waste. If section 1008 can be said to create an unreasonable impediment to the orderly and effective administration of justice, it can make no difference whether the error is brought to the attention of the court by the parties or by the insight of the judge alone." (*Id.* at p. 312.) *Kollander* devoted substantial analysis to the separation of powers doctrine, but ultimately found it unnecessary to reach the constitutional issue because the facts supported the trial court's finding that new circumstances had arisen, thereby satisfying the prerequisites of section 1008. (*Kollander*, at pp. 307-308, 313-314.)

> b. *The separation of powers doctrine precludes an interpretation of section 1008 that would deprive a trial court of jurisdiction to reconsider its interim orders sua sponte.*

Here, neither the trial court nor the parties suggested that reconsideration of the motion was based upon a change in the law. If section 1008, subdivisions (c), (e), and (g) deprive a trial court of jurisdiction to reconsider its own interim orders except when a change of law exists, the trial court here lacked jurisdiction to reconsider. We therefore must decide whether section 1008 can constitutionally be interpreted to limit a trial court's ability to reconsider its own interim rulings. We conclude it cannot.

Article III, section 3 of the California Constitution sets forth the fundamental separation of powers underlying our state government. "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." (Cal. Const., art. III, § 3; see also Cal. Const., art. IV, § 1, art. V, § 1, and art. VI, § 1 [providing for legislative, executive, and judicial branches of government].) ▌ The primary purpose of the separation of powers doctrine " 'is to prevent the combination in the hands of a single person or group of the basic or fundamental powers of government[,]' " (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 557 [117 Cal.Rptr.2d 168, 41 P.3d 3] (*Manduley*)), as well as to avoid overreaching by one governmental branch against another. (*People v. Bunn* (2002) 27 Cal.4th 1, 16 [115 Cal.Rptr.2d 192, 37 P.3d 380].)

However, the separation of powers doctrine has never been applied rigidly. (*Manduley, supra,* 27 Cal.4th at p. 557; *Superior Court v. County of*

*Mendocino* (1996) 13 Cal.4th 45, 52 [51 Cal.Rptr.2d 837, 913 P.2d 1046] (*Mendocino*).) The branches are interdependent and "share common boundaries"; "no sharp line between their operations exists." (*People v. Bunn, supra,* 27 Cal.4th at p. 14; *Manduley, supra,* at p. 557.) Instead, a " 'sensitive balance' " underlies our tripartite system, and "assumes a certain degree of mutual oversight and influence." (*People v. Bunn, supra,* at p. 14.)

Accordingly, the activities of one branch of government are not immune from regulation or oversight by another branch. (*People v. Bunn, supra,* 27 Cal.4th 1, 16.) One branch may take actions that significantly affect another branch. (*Manduley, supra,* 27 Cal.4th at p. 557; *Mendocino, supra,* 13 Cal.4th at p. 52.) The Legislature routinely "enacts statutes that govern the procedures and evidentiary rules applicable in judicial and executive proceedings." (*Mendocino, supra,* at p. 53.) Indeed, one need only peruse the Code of Civil Procedure to be reminded that numerous statutes govern the procedures litigants must follow in the courts of this state. The Legislature does not necessarily violate the separation of powers doctrine even by legislating with regard to "inherent judicial power[s] or function[s]." (*Id.* at p. 57.) The California Supreme Court has "regularly approved legislation affecting matters over which the judiciary has inherent power and control." (*People v. Bunn, supra,* 27 Cal.4th at p. 16 [collecting cases].)

■ However, "[d]espite this interdependence, the Constitution does vest each branch with certain 'core' [citation] or 'essential' [citation] functions that may not be usurped by another branch" without violating the separation of powers doctrine. (*People v. Bunn, supra,* 27 Cal.4th at p. 14.) The separation of powers doctrine serves to protect the core constitutional functions of each branch from "lateral attack by another branch," and prohibits the Legislature " 'from arrogating to itself core functions of the executive or judicial branch.' [Citation.]" (*Id.* at p. 16.) While the Legislature may adopt reasonable regulations that affect a court's inherent powers or functions, it may not constitutionally enact provisions that would " 'defeat' or 'materially impair' a court's exercise of its constitutional power or the fulfillment of its constitutional function." (*Mendocino, supra,* 13 Cal.4th at pp. 58-59; *Brydonjack v. State Bar* (1929) 208 Cal. 439, 444 [281 P. 1018, 66 A.L.R. 1507].)

Among the judiciary branch's "core" or "essential" functions is the power to resolve specific controversies between parties and declare the law. (*People v. Bunn, supra,* 27 Cal.4th at p. 15; *Marin Water etc. Co. v. Railroad Com.* (1916) 171 Cal. 706, 711-712 [154 P. 864].) It is also a core judicial function "to ensure the orderly and effective administration of justice." (*Kollander, supra,* 98 Cal.App.4th at p. 312.) The courts have the inherent

power, derived from the Constitution, to ensure the orderly administration of justice; this power is "not confined by or dependent on statute . . . ." (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 267 [279 Cal.Rptr. 576, 807 P.2d 418]; *People v. Castello, supra,* 65 Cal.App.4th at pp. 1247-1248.) " 'One of the powers which has always been recognized as inherent in courts, which are protected in their existence, their powers and jurisdiction by constitutional provisions, has been the right to control its order of business and to so conduct the same that the rights of all suitors before them may be safeguarded. This power has been recognized as judicial in its nature, and as being a necessary appendage to a court organized to enforce rights and redress wrongs.' " (*Lorraine v. McComb* (1934) 220 Cal. 753, 756 [32 P.2d 960]; *Kollander, supra,* 98 Cal.App.4th at p. 312.) Implicit in the constitutionally derived power to rule on controversies is the court's power to properly exercise its sound discretion.

 Interpreted as Case suggests, section 1008 would emasculate the judiciary's core power to decide controversies between parties. The legislative restriction of a court's ability to sua sponte reconsider its own rulings is not merely a reasonable regulation on judicial functions. Instead, such a restriction would directly and materially impair and defeat the court's most basic functions, exercising its discretion to rule upon controversies between the parties and ensuring the orderly administration of justice. Courts are empowered to decide controversies, a power derived from the state constitution. We are hard pressed to conceive of a restriction that goes more directly to the heart of a court's constitutionally mandated functions. Under Case's reading, if a court realizes it has misunderstood or misapplied the law, it is prohibited from revisiting its ruling, whether it realizes its mistake 10 minutes or 10 days later, and no matter how obvious its error or how draconian the effects of its misstep. "A court could not operate successfully under the requirement of infallibility in its interim rulings. Miscarriage of justice results where a court is unable to correct its own perceived legal errors . . . ." (*People v. Castello, supra,* 65 Cal.App.4th at p. 1249.)

Accordingly, we hold that, if interpreted to eliminate a court's jurisdiction to reconsider its interim orders on its own motion, section 1008 violates the separation of powers doctrine embodied in the California Constitution.

c. *Section 1008 governs the actions of the parties to civil litigation.*

Fortunately, we do not believe section 1008 must be read in the constitutionally infirm fashion suggested by Case. When construing a statute, our goal is to ascertain the intent of the Legislature. We look first to the words of the statute itself, giving them their usual and ordinary meaning. If

the statutory language is clear and unambiguous, we need go no further. If the statutory language is susceptible to more than one reasonable interpretation, we may look to the legislative history, the apparent goals of the legislation, and public policy, to determine its meaning. (*Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 129 [96 Cal.Rptr.2d 485, 999 P.2d 718]; *California Correctional Peace Officers Assn. v. State of California* (2000) 82 Cal.App.4th 294, 307-308 [98 Cal.Rptr.2d 302].)

 The plain language of section 1008 consistently refers to "applications" for reconsideration and "renewals" of previous motions. (E.g., § 1008, subd. (a) [party may *"make application* to the same judge or court that made the order" (italics added)];. subd. (b) [party "may make a subsequent *application* for the same order upon new or different facts, circumstances, or law" (italics added)"].) Tellingly, subdivision (e), the section specifying the court's jurisdiction, states: "This section *specifies the court's jurisdiction with regard to applications* for reconsideration of its orders and *renewals of previous motions*, and *applies to all applications* to reconsider any order of a judge or court, *or for the renewal of a previous motion*, whether the order deciding the previous matter or motion is interim or final. *No application to reconsider any order or for the renewal of a previous motion* may be considered by any judge or court unless made according to this section." (Italics added.) Likewise, subdivision (g) states, "This section applies to *all applications* for interim orders." (Italics added.)

Moreover, as noted in *Castello,* the uncodified expression of legislative intent focused exclusively on *motions* for reconsideration, and renewals of previous motions. "(a) Since the enactment of Section 1008 of the Code of Civil Procedure, some California courts have found that the section does not apply to interim orders. [¶] (b) In enacting Section 4 of this act, it is the intent of the Legislature to clarify that no *motions* to reconsider any order made by a judge or a court, whether that order is interim or final, may be heard unless the *motion* is filed within 10 days after service of written notice of entry of the order, and unless based on new or different facts, circumstances, or law. [¶] (c) In enacting Section 4 of this act, it is the further intent of the Legislature to clarify that *no renewal of a previous motion*, whether the order deciding the previous motion is interim or final, may be heard unless the *motion* is based on new or different facts, circumstances, or law." (Stats. 1992, ch. 460, § 1, p. 1831, italics added; *People v. Castello, supra,* 65 Cal.App.4th at pp. 1248-1249, fn. 5.) The Legislative Counsel's Digest likewise spoke in terms of applications made by a party. "This bill would revise [section 1008] to provide that these *applications* also may be made based upon new or different circumstances or law. It would provide that *an application to reconsider* may only be made to the same judge or court that

made the order, and would require *the party making an application* to reconsider to show certain information by affidavit. The bill would provide that these provisions specify the court's jurisdiction *with regard to applications for reconsideration* of its orders and *renewals of previous motions, and that these provisions apply to all applications to reconsider any order,* and to *all renewals of previous motions,* whether the order deciding the previous matter or motion is interim or final." (Legis. Counsel's Dig., Sen. Bill No. 1805 (1991-1992 Reg. Sess.) 4 Stats. 1992, Summary Dig., p. 165, italics added; *People v. Castello, supra,* at pp. 1248-1249, fn. 5.)

Clearly, trial courts do not make applications, motions, or renewals of motions to themselves. The language chosen by the Legislature strongly suggests it intended to restrict the actions of *parties* in bringing motions to reconsider, but did not contemplate restricting the discretion of a trial judge who realizes he or she has erred in making a ruling and wishes to remedy the mistake. This statutory language unambiguously confines the procedural requirements of section 1008 to applications or motions for renewal brought by parties, and does not purport to govern a court's reconsideration of an order on its own motion.

Second, even assuming the statutory language can be considered ambiguous the stated legislative purpose behind the 1992 amendment to section 1008 was to conserve judicial resources. "Inclusion of interim orders within the application of Section 1008 is desirable in order to reduce the number of motions to reconsider and renewals of previous motions heard by judges in this state." (Stats. 1992, ch. 460, § 1, subd. (d), p. 1831; *Darling, Hall & Rae v. Kritt, supra,* 75 Cal.App.4th at p. 1157.) This legislative purpose is advanced if section 1008 is understood to apply to the actions of parties, not to a court's sua sponte reconsideration of its own interim order. When the court rules upon a party's motion, it is to be expected that the losing party will often feel the court has erred, and therefore may be inclined to seek reconsideration if such a procedure is readily available. Thus, absent section 1008, trial courts might find themselves inundated with reconsideration motions requiring that they rehash issues upon which they have already ruled and about which they have no doubt. Section 1008, properly construed, protects trial courts from being forced to squander judicial time in this fashion. We think it would be a much less common occurrence, however, that a trial court would sua sponte conclude that its prior ruling was erroneous and seek to modify it. Forcing the parties to proceed where there is recognized error in the case would result in an enormous waste of the court's and the parties' resources. Here, for example, the trial court's lack of jurisdiction to correct its own error would have necessitated a lengthy jury trial.

We acknowledge that arguments to the contrary are possible. For example, the addition of subdivision (c) of section 1008, specifying that the court can reconsider an order on its own motion if the law has changed, appears superfluous if the Legislature believed courts possessed this inherent power. *Castello* pointed out that a Senate amendment, specifying that section 1008 should not be construed to limit a judge's right to exercise his or her own discretion in reconsidering an order, was deleted in the Assembly, giving rise to an inference that the Legislature either intended to eliminate discretionary reconsideration, or, alternatively, suggesting the Legislature concluded the language was superfluous. (*People v. Castello, supra,* 65 Cal.App.4th at pp. 1249-1250, fn. 7.) A summary prepared for a May 5, 1998 hearing before the Senate Judiciary Committee stated that the statute was being amended to "additionally specify that Section 1008 applies to all applications for interim orders." Such amendment was necessary, the summary stated, because: "judges are continuing to entertain motions to reconsider interim court orders outside the parameters set in the statute. The author [of the bill] contends that this judicial disregard of the statute and continued exercise of judicial discretion to hear matters outside the court's express jurisdiction leaves many litigants without certitude, and detracts from the efficient administration of justice." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1556 (1997-1998 Reg. Sess.) as amended May 4, 1998.) Allowing a trial court's sua sponte reconsideration of its interim rulings may in some cases contribute to litigants' sense of uncertainty, although allowing such reconsideration does indeed contribute to a court's ability to do justice. "The inability to correct an error prior to trial and appeal is ' "a serious impediment to a fair and speedy disposition of causes." ' [Citation.]" (*Kollander, supra,* 98 Cal.App.4th at p. 312 [quoting *De La Beckwith v. Superior Court* (1905) 146 Cal. 496, 500 [80 P. 717]; see also Miller & Horton, *About Face* (Mar. 2000) 23 L.A. Law. 43, 48 ["Barring a trial court from reconsidering a prior ruling (or modifying or reversing its prior ruling) unless certain procedural prerequisites are satisfied defeats the trial court's power to do justice."].)

■ Nevertheless, even assuming arguendo that the language of section 1008 is not free from ambiguity, it is well settled that "a court must, whenever possible, construe a statute so as to preserve its constitutional validity. [Citations.]" (*Kraus v. Trinity Management Services, Inc., supra,* 23 Cal.4th at p. 129.) " 'If "the terms of a statute are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the Constitution." [Citations.] Consequently, "[i]f feasible within bounds set by their words and purposes, statutes should be construed to preserve their constitutionality." [Citation.]' [Citation.]" (*Rowe v. Superior*

*Court* (1993) 15 Cal.App.4th 1711, 1722 [19 Cal.Rptr.2d 625].) "We presume that the Legislature understands the constitutional limits on its power and intends that legislation respect those limits." (*Kraus v. Trinity Management Services, Inc., supra,* at p. 129.) In light of these principles, we interpret section 1008 to apply only to a party's motion for reconsideration or renewal, and not to a court's reconsideration of an interim order on its own motion. This understanding of the statute preserves its constitutionality while still effectuating the Legislature's intent.

### 2. *The trial court exercised due consideration.*

 A trial court must exercise due consideration before modifying, amending, or revoking its prior order. (*Darling, Hall & Rae v. Kritt, supra,* 75 Cal.App.4th at p. 1157.) There is no question that the trial court exercised the requisite degree of consideration. The court expressed concern about its ruling even when first made. It stated that it was reconsidering its ruling as it became apparent that the defense was prejudiced and the trial could not proceed in a reasonable fashion within the mandatory five-year period. The court's comments indicate that it devoted substantial time and effort to pondering the matter over a period of days, made efforts to fairly accommodate all parties, heard from the parties extensively, and finally concluded it had made the wrong decision. We find the court duly considered the matter before correcting its prior order.[4]

### DISPOSITION

The judgment is affirmed. The parties are to bear their own costs on appeal.

Croskey, Acting P. J., and Kitching, J., concurred.

---

[4]In her briefing, in addition to her assertion that the trial court exceeded its jurisdiction, Case argued that the trial court had abused its discretion because the delay in prosecution was excusable and respondents were not unduly prejudiced. At oral argument, Case abandoned this contention and conceded that, assuming the trial court had jurisdiction to reconsider its ruling, it did not abuse its discretion by granting the motion. Accordingly, we need not consider here the question of whether the trial court abused its discretion by dismissing the action.