[No. A092076. First Dist., Div. Three. Feb. 19, 2003.]

DARLENE KERNS, Plaintiff and Appellant, v.
CSE INSURANCE GROUP, Defendant and Respondent.

COUNSEL

Semansky & Jenny, Scott E. Jenny; Law Office of Scott E. Jenny and Scott E. Jenny for Plaintiff and Appellant.

Greines, Martin, Stein & Richland, Marc J. Poster; Prestholt & Fidone and Marjorie E. Motooka for Defendant and Respondent.

OPINION

McGUINESS, P. J.—Darlene Kerns appeals from summary judgment entered in favor of respondent CSE Insurance Group upon the latter's motion pursuant to Code of Civil Procedure section 437c[1] and the denial of her cross-motion for summary judgment. Appellant, the assignee of respondent's insureds, had filed suit to enforce respondent's alleged duty to defend its insureds in a previously settled personal injury lawsuit. At issue on this appeal are the following contentions: (a) the trial court acted in excess of its jurisdiction by entertaining and ruling on respondent's motion for summary judgment when a different judge had previously denied the identical motion and the renewed motion was in violation of the controlling procedural requirements set forth in section 1008; (b) the trial court erred in determining as a matter of law that there was no potential for coverage under respondent's policy and thus no duty to defend the insureds, appellant's assignors; and (c) the undisputed facts demonstrate that appellant herself was entitled to summary judgment on the issue of respondent's duty to defend.

On the procedural and factual record presented, we conclude that the trial court exceeded its jurisdiction by entertaining respondent's renewed motion for summary judgment, because in so doing it violated the exclusive and controlling procedural prerequisites set by section 1008 for the reconsideration or renewal of a previously denied motion. The trial court left unaddressed and undecided important triable issues of material fact on the basis of which summary judgment had previously been denied. For these reasons, we must reverse.

FACTUAL AND PROCEDURAL BACKGROUND

On February 12, 1997, respondent issued a personal homeowners policy (the Policy) to C. M., effective for the policy period from January 28, 1997, to January 28, 1998. In the portion dealing with coverage for personal

---

[1]Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

liability, the Policy specified that respondent would defend and indemnify claims made against the insured on account of bodily injury or property damage "caused by an occurrence."[2] The Policy specifically defined "occurrence" as "an accident, including continuous and repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: [¶] a. bodily injury; or [¶] b. property damage." The specified limit of liability on coverage "for all damages resulting from any one occurrence" was $100,000, "regardless of the number of insureds, claims made or persons injured." Among the standard endorsements expressly incorporated in the Policy were exclusions from liability coverage for (a) any bodily injury "which is expected or intended by an insured or which is the forseeable [sic] result of an act or ommission [sic] intended by an insured"; and "any illegal act commited [sic] by or at the direction of an insured."[3]

In the early morning hours of March 1, 1997, C. M.'s daughter, 16-year-old D. M., was arrested for vandalizing a house with a crowbar. When

___

[2]Coverage E of the Policy, for "Personal Liability," provides in pertinent part as follows: "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will: [¶] 1. pay up to our limit of liability for the damages for which the insured is legally liable . . . and [¶] 2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability."

[3]The quoted language, from the exclusions section of endorsement No. H300CA00188, states in pertinent part: "Under item 1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others, the following changes are made: [¶] Item a. is replaced by the following: [¶] a. which is expected or intended by an insured or which is the forseeable [sic] result of an act or ommission [sic] intended by an insured. [¶] . . .

"Under item 2. Coverage E—Personal Liability, the following exclusions are added: [¶] g. punitive or exemplary damages awarded against an insured. [¶] h. any illegal act commited [sic] by or at the direction of an insured. [¶] i. bodily injury or property damage arising out of: [¶] (1) the entrustment by any insured to any person; [¶] (2) the negligent supervision by any insured of any person; [¶] (3) any liability statutorily imposed on any insured; or [¶] (4) any liability assumed through an unwritten or written agreement by any insured; [¶] with regard to the ownership, maintenance or use of any aircraft, watercraft, or motor vehicle (or any other motorized land conveyance) which is not covered under Section II of this policy."

Respondent cites the latter exclusion provision for "negligent supervision by any insured of any person" in support of its contention that the Policy excluded coverage for C. M.'s alleged negligent supervision of his daughter D.. However, respondent fails to acknowledge the immediately following language. On its face, this language—which does not appear ambiguous to us—limits the applicability of the exclusion for "negligent supervision" to situations involving bodily injury or property damage arising from the use of ownership, maintenance or use of motor vehicles. To the extent the exclusion may be ambiguous, we must resolve any ambiguity regarding this language against the insurer who drafted the policy, and in favor of the objectively reasonable expectations of the insured. (Safeco Ins. Co. v. Robert S. (2001) 26 Cal.4th 758, 763 [110 Cal.Rptr.2d 844, 28 P.3d 889].)

searched by a Contra Costa County deputy sheriff, she was found in possession of two hypodermic syringes. She was released to the custody of her father. Approximately two hours later, she broke a window of appellant's house and entered. According to D.'s own deposition testimony, she had been using "[c]rank," or methamphetamine, for at least two months, and found it "addicting." At the time of the incident she was feeling "temporarily schiz," "paranoid," and was "hearing voices," as she had for some "[t]wo months or so." Even when she made a conscious attempt to stop using crank, she continued to hear voices and have visual and auditory hallucinations. Appellant "had some plants and stuff hanging." When D. "heard" the hanging plants, "[s]omething triggered" her, causing her to break into appellant's house, grab a knife from the kitchen, go into appellant's room, and stab her. D. had never met or known appellant before this incident. D. did not know whom she was attacking, and actually thought she was attacking "[a] man." She "[n]ever intended to hurt" appellant "if I would have known it was a woman," although she "intended to injure the person who was putting the symbols [the hanging plants] up in the front porch. That's what I intended to do."

D. was arrested outside appellant's home. She told police that she had recently resumed her heavy methamphetamine use, and was feeling "paranoid" before the incident, as though people were following her. She entered appellant's house because the hanging plants reminded her of a man who had sexually attacked her. A doctor who examined her at juvenile hall opined that she "may be psychotic." D. entered a plea of no contest to attempted second degree murder with personal use of a deadly weapon and infliction of great bodily injury. She was sentenced to a California Youth Authority facility.

In September 1997, appellant filed a complaint against D. and her parents (the M. family), alleging four causes of action and seeking damages for assault, battery, negligence and negligent supervision.[4] In the first cause of action, for assault, appellant alleged that D. "placed [her] in fear for her personal safety" by threatening her with bodily injury with a knife, and that "[i]n doing the acts as alleged above, [D.] intended to cause or place [appellant] in apprehension of a harmful and offense [sic] contact with [appellant's] person," as a result of which appellant suffered injuries and damages. Each of the three subsequent causes of action incorporated by reference and thereby realleged these particular allegations of intentionality

---

[4]Appellant's underlying complaint named D. M., her father C. M., and her mother, identified as "Mrs. [C. M.]." However, D.'s mother did not reside with C. M. at the time of the incident, and appellant has made no claim that D.'s mother was an insured under the Policy issued by respondent.

on D.'s part "the same as if [they] had been expressly repeated" in the other causes of action.

Appellant also made additional specific allegations that D.'s behavior was intentional in the second cause of action, for battery. Thus, in count two appellant alleged that D. stabbed appellant multiple times in the area of appellant's head and shoulders; "[i]n doing the acts as alleged above, defenants [sic], and each of them, acted deliberately and with the intent to make a contact with [appellant's] person"; and "[t]he aforementioned conduct of [D.] . . . was willfull [sic] and malicious and was intended to oppress and cause injury to [appellant]." In the third cause of action, appellant realleged the earlier allegations that D. acted "deliberately and with the intent to make . . . contact" with appellant's person, adding allegations that in doing so she "negligently injured" appellant and "negligently consumed drugs, alcohol, medication, or failed to consume medication, such that she was unable to control her own behavior." Finally, in the fourth cause of action against D.'s parents for negligent supervision, appellant again realleged the earlier allegations that D.'s acts were intentional, and added specific allegations that her parents were "liable for the aforementioned intentional and negligent acts . . . based upon California Civil Code Section 1714.1."[5]

C. M. notified respondent of appellant's claim against him and D. on March 28, 1997. On April 23, 1997, respondent sent Mr. M. a letter reserving its rights under the various applicable endorsements of the Policy, including the exclusions for bodily injury "expected or intended" by an insured or which is the foreseeable result of an act or omission intended by an insured, and for "any illegal act committed by or at the direction of an insured." After an investigation, respondent informed its insured by letter dated October 8, 1997, that it would not defend or indemnify appellant's claims and lawsuit. Respondent's letter stated that it had "determined" that "the actions of D. were willful, intentional, malicious and illegal," and therefore excluded by the provisions of the Policy and by Insurance Code section 533.[6] On November 13, 1997, through his attorney, Mr. M. asked respondent to reconsider its decision not to defend. Respondent thereafter

---

[5]Civil Code section 1714.1 provides in pertinent part: "(a) Any act of willful misconduct of a minor which results in injury or death to another person or in any injury to the property of another shall be imputed to the parent or guardian having custody and control of the minor for all purposes of civil damages, and the parent or guardian having custody and control shall be jointly and severally liable with the minor for any damages resulting from the willful misconduct."

[6]Insurance Code section 533, hereinafter referred to as section 533, provides that "[a]n insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." The statute constitutes an implied exclusionary clause read into all insurance contracts. (*J. C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009, 1019 [278 Cal.Rptr. 64, 804 P.2d 689]; *Jacobs v. Fire Ins.*

obtained the independent legal opinion of outside coverage counsel that there was no coverage or duty to defend any of the insureds under the Policy. On this basis, respondent again denied Mr. M.'s claim by letter dated December 11, 1997.

Appellant's case against the M. family proceeded to settlement. Mr. M.'s attorney notified respondent in writing of an impending settlement conference scheduled for April 9, 1998, and informed respondent that appellant had proposed a stipulated settlement judgment in the amount of $250,000, with a covenant not to execute against the M. family in exchange for an assignment of their rights against respondent. Mr. M.'s attorney stated that he would recommend the M. family accept the offer, with a reservation of their right to seek attorney fees and costs from respondent. On the day of the settlement conference, appellant settled with the M. family without a trial on the merits, on the terms outlined in the letter of Mr. M.'s attorney to respondent. Thereafter, the trial court entered judgment in favor of appellant and against D. and Mr. and Mrs. M. in the amount of $250,000, pursuant to appellant's covenant not to execute on or enforce the judgment and the concurrent assignment by the M. family of their rights against respondent, with the exception of their rights to attorney fees incurred as a result of respondent's failure to defend them.

On December 1, 1998, appellant filed this action against respondent for declaratory relief, breach of contract and breach of the implied covenant of good faith and fair dealing, seeking to recover the amount of the underlying stipulated judgment from respondent based on the M. family's assignment of rights against respondent. On July 2, 1999, respondent moved for summary judgment on the grounds it had no duty to defend or indemnify the M. family because the acts of D. on which appellant's underlying claims were based were intentional and willful under section 533. In addition, respondent cited and relied upon the Policy exclusions for bodily injury "intended by an insured" or which is the foreseeable result of an act or omission intended by an insured, and for "any illegal act committed by or at the direction of an insured." Respondent's separate statement of undisputed facts, filed in connection with the motion, specifically set out these Policy exclusions for intentional and illegal acts. Appellant did not dispute respondent's citation of these exclusions.[7]

In opposition to the motion for summary judgment, appellant submitted argument and evidence to the effect that D. was "legally insane" at the time

_Exchange_ (1995) 36 Cal.App.4th 1258, 1268 [42 Cal.Rptr.2d 906]; _Shell Oil Co. v. Winterthur Swiss Ins. Co._ (1993) 12 Cal.App.4th 715, 739 [15 Cal.Rptr.2d 815].)

[7]Although appellant's appendix on appeal does not include a copy of respondent's separate statement of undisputed facts filed with its first motion for summary judgment, the copy of appellant's own initial statement of disputed and undisputed facts filed in response thereto on August 10, 1999, sets out respondent's initial statement of undisputed facts in full. The

of her attack on appellant. Among other things, appellant's evidence included the declaration of a psychologist, Dwight Murray, Ph.D. On the basis of his review of D.'s juvenile records and the transcript of her videotaped deposition, Murray opined that D. "was laboring under such a defect of reason from disease of the mind as to not know the nature and quality of the act she was doing when she attacked [appellant], or if she did know, that she could not distinguish right from wrong when she was committing the act." In reply, respondent argued that appellant had "failed to introduce any credible evidence" that D. was legally insane for purposes of section 533, and had therefore failed to show the existence of a triable issue of material fact on that question.

By order filed September 15, 1999, the trial court denied respondent's motion for summary judgment. In its decision, the trial court ruled that: (1) respondent's objections to psychologist Murray's declaration "go to the weight of the expert's opinion" and would require an assessment of his credibility, which was "precluded" in the summary judgment context; (2) respondent failed to address the issue of whether D. "was capable at the time of the attack [of] distinguishing right from wrong"; and (3) even assuming "arguendo" that Murray's declaration was inadmissible, there was sufficient evidence in the record to raise triable issues of material fact as to whether D. was legally insane when she attacked appellant, whether her conduct was willful for purposes of section 533, and therefore whether respondent owed the M. family a duty to defend or indemnify.[8] Respondent did not seek reconsideration of this order. Instead, it filed a petition for writ of mandate to this court which we denied without opinion on October 29, 1999.

---

numbered paragraphs of the separate statement of undisputed facts referring to the Policy exclusions for intentional and illegal acts are specifically cited and referred to in the body of respondent's memorandum of points and authorities in support of its original motion for summary judgment.

[8]Prior to the hearing date, the trial court, Judge Barbara Zuniga, issued a tentative ruling as follows: "Defendant has failed to establish it had no duty to defend or indemnify the [M. family] in plaintiff's action against them. Defendant's evidence actually confirms that whether D. M. was legally insane when she attacked plaintiff is disputed. There are triable issues of material fact as to whether Insurance Code § 533 applies."

On September 15, 1999, Judge Zuniga filed an "unreported minute order" confirming the earlier tentative ruling and stating in pertinent part as follows: "1. Court has re-reviewed the Murray declaration and objections thereto. [Respondent] is incorrect, a psychologist does not have to personally interview a subject in order to render an opinion. Nor does failure to conduct a personal interview render the opinion speculative. The objections voiced by [respondent] go to the weight of the expert's opinion and would require the court to engage in assessing the expert's credibility. This is precluded in a motion for summary judgment/summary adjudication.

"2. Court also notes in motion [respondent] focuses solely on the issue of whether [D.] did . . . or did not know or understand the nature and quality of her act. [Respondent] totally failed to address second prong of insanity test. That is whether [D.] was capable at the time of the attack [of] distinguishing right from wrong.

The case proceeded to trial. At pretrial conference, Judge William M. Kolin bifurcated proceedings on legal and factual issues. The parties waived the right to a jury trial. On the first day of trial to the court, March 20, 2000, an evidentiary dispute arose regarding whether, in response to appellant's discovery requests, respondent had produced a complete copy of the Policy in force at the time of the loss. Judge Kolin continued the trial to resolve this issue. In the interim the parties stipulated to, and the trial court permitted, the filing of cross-motions for summary judgment or summary adjudication.[9]

In April 2000, appellant and respondent filed cross-motions for summary judgment on the issue of coverage. Respondent's second motion for summary judgment was a verbatim duplication of its earlier motion. Respondent's separate statement of undisputed facts was also identical to the statement it filed in connection with its first motion for summary judgment. Both separate statements specifically called the trial court's attention to the Policy exclusions for injuries "intended by an insured" and for "any illegal act committed by or at the direction of an insured."

In her motion for summary judgment, appellant argued that Judge Zuniga's prior denial of respondent's earlier motion for summary judgment amounted to a dispositive ruling that respondent owed the M. family a duty to defend. In opposition to appellant's motion, respondent argued that there was no potential for coverage under the Policy because appellant's injury was not the result of an accident, D.'s conduct and actions were illegal, and D.'s subjective intent to harm someone other than appellant was irrelevant to the willfulness of her act. In reply to appellant's procedural argument that

"3. Finally, assuming arguendo, Dr. Murray's testimony is inadmissible[,] there is still sufficient evidence in the record to raise a triable issue of material fact regarding whether [D.'s] conduct was willful within the meaning of Insurance Code § 533."

[9]The record does not contain any formal stipulation between the parties to file cross-motions for summary judgment. It appears that any such stipulation was informal and oral. Moreover, the parties disagree about the scope and intent of their agreement in this regard. The only page of transcript from the March 20, 2000, hearing in the record indicates the agreement to file cross-motions was made "tentatively" on the basis of respondent's alleged failure to provide evidence of the Policy endorsement booklet in connection with its earlier motion for summary judgment. Respondent argues that the agreement to permit the filing of cross-motions was made at appellant's insistence in order to accommodate her failure to file a timely motion for summary judgment prior to the initial trial date, and that her claim to have never received a complete copy of the Policy prior to respondent's first motion for summary judgment was at best suspect. Appellant insisted she had only agreed to respondent filing a new motion for summary judgment on the basis of her assumption the new motion would be in compliance with section 1008 and based on new facts or law; and she had not agreed to respondent simply refiling the same motion for summary judgment it had previously filed, and which had already been denied. In the absence of a written agreement or other evidence of the terms of the parties' stipulation, it is impossible for us to determine the actual terms thereof.

respondent's second summary judgment motion was barred by section 1008, respondent argued that appellant had essentially waived that hurdle by stipulating to the filing of cross-motions for summary judgment; asserted that the second motion was proper under the statute because Judge Zuniga did not have the "complete" Policy before her at the time of the earlier motion for summary judgment; and contended that because both parties had waived jury trial, the trial court would in any event be required to decide the coverage issues as a matter of law at the very outset of trial.[10]

After the trial court issued a tentative ruling in favor of respondent, oral argument on the cross-motions took place on May 25, 2000. At the hearing, appellant's attorney again argued that (1) respondent's motion for summary judgment was procedurally barred by section 1008 as a tardy motion for reconsideration that failed to raise any new factual or legal arguments and was in fact identical to the earlier such motion; and (2) the undisputed facts of D.'s drug use and psychological instability at the time of the attack established at least a potential for coverage under the Policy, thereby triggering respondent's duty to defend. Respondent replied that (1) its renewed motion for summary judgment was not procedurally barred because appellant had stipulated to its filing; (2) the trial court was required to decide the issues raised by the motion because it was being heard at the outset of the bifurcated portion of trial on legal issues much like a motion to dismiss or for nonsuit; and (3) the evidence regarding D.'s mental condition did not contradict the fact that her acts and conduct were intentional, willful and illegal, and thus excluded from coverage both contractually and by statute.

Following the hearing, the trial court issued an order sustaining the tentative ruling. The trial court found that: (1) "as a matter of law" D.'s stabbing of appellant was "an illegal act," coverage of which was "precluded by the illegal act exclusion" of the Policy; (2) her "pleas [sic] of no contest to the charge of attempted murder is admissible in this action as an admission of an intentional act, since attempted murder is a specific intent crime"; (3) "[t]herefore, there was no potential for coverage, since the Policy excludes intentional acts"; and (4) respondent had no duty to defend or to indemnify.[11] On this basis, Judge Kolin granted respondent's motion for

[10]In its May 16, 2000, memorandum of points and authorities submitted in reply to appellant's opposition to the motion for summary judgment, respondent argued: "Lastly, since the parties have waived jury, this court will have to decide these issues as part of the trial. Accordingly, [appellant's] argument that [respondent's] motion for summary judgment should not be considered because it was previously denied has no procedural benefit as this court will have to decide these issues anyway, either on May 25 or June 19[, 2000]."

[11]The trial court issued two minute orders dated May 25, 2000, both signed by a deputy clerk. The trial court's minute order denying appellant's motion for summary judgment

summary judgment. This appeal timely followed entry of judgment on June 12, 2000.

## JURISDICTION TO RULE ON RESPONDENT'S SECOND SUMMARY JUDGMENT MOTION

Before we analyze the substantive correctness of the order granting summary judgment, we must address the important procedural issue of whether the trial court erred in even considering respondent's second summary judgment motion. Appellant argues that respondent failed to comply with the statutory prerequisites of section 1008 when it simply refiled the identical motion for summary judgment before Judge Kolin in April 2000 that it had previously filed in law and motion in July 1999, and which had been denied by Judge Zuniga in September 1999 based on the finding that there were triable disputed issues of material fact. Because respondent's motion failed to comply with the requirements of section 1008, appellant contends the trial court, acting through Judge Kolin, lacked jurisdiction to rule on, much less grant, respondent's second motion for summary judgment.

Respondent replies that (1) its second motion was in compliance with section 1008 because, in responding to *appellant's* arguments in favor of her cross-motion for summary judgment, respondent had "gone beyond its initial reliance" on section 533 to argue that coverage was additionally barred by the Policy exclusions for intentional and illegal acts; (2) even if respondent's second motion was in violation of section 1008, the trial court still had jurisdiction to correct an earlier "erroneous summary judgment ruling" under cases holding that trial courts have inherent jurisdiction to reconsider their interim rulings; and (3) in any event, "any alleged violation of Section 1008 could not have been prejudicial" because (a) Judge Zuniga's denial of respondent's first summary judgment motion was erroneous on its merits; (b) the parties had waived jury trial and Judge Kolin was required to try the issue of coverage as a matter of law; and (c) it was ultimately immaterial

---

stated: "Plaintiff has failed to carry her burden of showing that there was potential coverage under the [P]olicy, given the exclusions for intentional and for illegal acts. Plaintiff has not presented admissible evidence that these exclusions were not in force at the time of the incident."

The trial court's minute order granting respondent's second motion for summary judgment, in turn, was as follows: "The court finds as a matter of law that the stabbing was an illegal act, and coverage is precluded by the illegal act exclusion of the [P]olicy. In addition, the minor's pleas [sic] of no contest to the charge of attempted murder is admissible in this action as an admission of an intentional act, since attempted murder is a specific intent crime. See *Allstate Insurance Co. v. Kim W.* (1984) 160 Cal.App.3d 326 [206 Cal.Rptr. 609] and *Interinsurance Exchange v. Flores* (1996) 45 Cal.App.4th 661 [53 Cal.Rptr.2d 18]. Therefore, there was no potential for coverage, since the [P]olicy excludes intentional acts. Hence, defendant had no duty [to] defend, nor indemnify."

whether the trial court made its ruling in the context of a renewed motion for summary judgment or a court trial.[12] Under the factual and procedural circumstances presented on this record, we must agree with appellant's contention that the trial court lacked jurisdiction to grant respondent's second motion for summary judgment.

Section 1008, subdivision (a) states the procedure for seeking reconsideration of a previous order. Section 1008, subdivision (b) sets out similar prerequisites for filing a renewed motion for an order that has previously been denied. Although the two subdivisions differ in certain minor details, each sets out the same essential requirements. Subdivision (a) provides that "any party affected" by a previous trial court order may, within 10 days after service of notice of entry of the order, make a motion for reconsideration thereof "based upon new or different facts, circumstances, or law," on condition of filing an affidavit stating "what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown." Similarly, subdivision (b) states that a party who has previously "made an application for an order which was refused in whole or part, or granted conditionally or on terms, may make a subsequent application for the same order upon new or different facts, circumstances, or law," provided a showing is made to the court "by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown." Subdivision (d) in turn states that a violation of section 1008 "may be punished as a contempt and with sanctions." Most significantly, subdivision (e) provides that section 1008 "applies to all applications to reconsider any order of a judge or court, or for the renewal of a previous motion," and "specifies the court's jurisdiction" with regard to this subject matter; and specifically declares that "[n]o application to reconsider any order or for the renewal of a previous motion may be considered by any judge or court unless made according to this section."[13]

Appellant contends that respondent's second motion constituted a flagrant attempt to circumvent the trial court's earlier order denying the same motion,

---

[12]We note that, on this appeal, respondent does not specifically rely on the parties' alleged "stipulation" in defending its filing of a second motion for summary judgment identical to the one earlier denied; nor does it argue that the agreement to file such cross-motions somehow trumped the statutory procedural requirements set out in section 1008.

[13]Section 1008 states in pertinent part as follows: "(a) When an application for an order has been made to a judge, or to a court, and refused in whole or in part, or granted, . . . any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order. The party making the application shall state by

and the trial court was jurisdictionally barred by section 1008 from entertaining it. As appellant correctly points out, respondent's second summary judgment motion before Judge Kolin was *identical* in all respects to the one it had earlier filed before Judge Zuniga in the law and motion department. Even the separate statements of undisputed facts respondent submitted in connection with each motion were identical. Contrary to respondent's assertion on appeal, respondent's renewed motion for summary judgment did not raise any "additional circumstances and grounds establishing the absence of coverage under specific terms of the [Policy]" that had not already been raised in the previous motion. Significantly, respondent's original motion for summary judgment before Judge Zuniga specifically cited the Policy exclusion provisions for intentional and illegal acts, and expressly set out these two exclusions in the separate statement of undisputed facts filed in conjunction with that motion. Thus, the two exclusion provisions upon which Judge Kolin based his decision granting respondent's second motion for summary judgment were also before Judge Zuniga at the time she denied the identical motion several months previously.

Without question, respondent's second motion for summary judgment did not qualify as a motion for reconsideration under section 1008, subdivision (a), having been brought more than 10 days after service of written notice of entry of Judge Zuniga's order denying the first motion, and before a different judge. Neither did respondent's renewed motion for summary judgment

affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown.

"(b) A party who originally made an application for an order which was refused in whole or part, or granted conditionally or on terms, may make a subsequent application for the same order upon new or different facts, circumstances, or law, in which case it shall be shown by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown. For a failure to comply with this subdivision, any order made on a subsequent application may be revoked or set aside on ex parte motion.

"(c) If a court at any time determines that there has been a change of law that warrants it to reconsider a prior order it entered, it may do so on its own motion and enter a different order.

"(d) A violation of this section may be punished as a contempt and with sanctions . . . . In addition, an order made contrary to this section may be revoked by the judge or commissioner who made it, or vacated by a judge of the court in which the action or proceeding is pending.

"(e) This section specifies the court's jurisdiction with regard to applications for reconsideration of its orders and renewals of previous motions, and applies to all applications to reconsider any order of a judge or court, or for the renewal of a previous motion, whether the order deciding the previous matter or motion is interim or final. No application to reconsider any order or for the renewal of a previous motion may be considered by any judge or court unless made according to this section.

"(f) For purposes of this section, an alleged new or different law shall not include a later enacted statute without a retroactive application.

"(g) This section applies to all applications for interim orders."

comply with the statutory requirements set out in section 1008, subdivision (b) for an application for an order that had previously been refused in whole or in part. The statute dictates that such an application must be "upon new or different facts, circumstances, or law." In addition, case law interpreting section 1008 has specifically held that a moving party must give a satisfactory explanation for the previous failure to present the allegedly new or different evidence or legal authority offered in the second application. (*Baldwin v. Home Savings of America* (1997) 59 Cal.App.4th 1192, 1194-1201 [69 Cal.Rptr.2d 592] (*Baldwin*); *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 688-691 [68 Cal.Rptr.2d 228].) As seen, respondent did not introduce any "new or different facts, circumstances, or law" in support of its second motion which it had not already raised in the first motion. Indeed, the record shows respondent simply submitted to Judge Kolin an exact copy of the same motion it had already argued to Judge Zuniga, without any additions, subtractions or modifications, much less any explanation for the fact the two motions were identical.

Section 1008 was amended in 1992 to add, among other things, the current subdivisions (c) and (e); it was amended again in 1998 to add current subdivision (g). (Stats. 1992, ch. 460, § 4, p. 1833; Stats. 1998, ch. 200, § 2; see *Kollander Construction, Inc. v. Superior Court* (2002) 98 Cal.App.4th 304, 310, 313-314 [119 Cal.Rptr.2d 614] (*Kollander*).) In adding these provisions, the Legislature expressly intended to make section 1008 both jurisdictional and applicable to all motions for reconsideration of interim orders, as well as all renewed motions for interim orders previously denied. (Stats. 1992, ch. 460, § 1, p. 1831; *Kollander, supra,* 98 Cal.App.4th at p. 310; *Morite of California v. Superior Court* (1993) 19 Cal.App.4th 485, 490-492 [23 Cal.Rptr.2d 666] (*Morite*).) Prior to those amendments, "[s]ection 1008 purported to be neither jurisdictional nor exclusive." (*Kollander, supra,* 98 Cal.App.4th at p. 310.)

"Amended section 1008 has generated a considerable body of law, and some disagreement, in the appellate courts." (*Case v. Lazben Financial Co.* (2002) 99 Cal.App.4th 172, 180 [121 Cal.Rptr.2d 405].) Indeed, as respondent correctly points out, there is a split among the appellate courts of the state on the issue of the extent to which section 1008 operates to jurisdictionally preclude a trial court from granting a renewed motion—whether for summary judgment or for some other form of relief—after denying an earlier such motion based on the same facts, circumstances and law. Some courts, including Division Two of this district, have concluded that section 1008 is jurisdictional and prescribes the sole procedural mechanism for renewal of a previously denied motion, or for reconsideration of prior interim orders.

The first such reported case was *Morite, supra,* 19 Cal.App.4th 485, from Division Seven of the Second Appellate District. *Morite* concerned a writ

petition to compel vacation of a lower court order setting a declaratory relief action for trial, and to compel reinstatement of a prior order of the same trial court staying trial of that action pending trial of another underlying lawsuit. Concluding that section 1008 "is the exclusive means for modifying, amending or revoking an order," and is "expressly jurisdictional" (*Morite, supra,* 19 Cal.App.4th at p. 490), the *Morite* court held that section 1008, as amended, "denies trial courts jurisdiction to reconsider, modify, amend or revoke their prior orders, whether final or interim, except pursuant to the procedure set forth" in the statute." (*Morite,* at p. 487.) On this basis, the appellate court issued a writ of mandate commanding the trial court to vacate the order setting the declaratory relief action for trial, finding that "[r]espondent [trial] court circumvented the jurisdictional limits of section 1008, subdivision (e) by consciously ignoring the stay order which had been entered by a predecessor judge of the same court. . . . [¶] . . . [I]f courts may simply ignore interim orders instead of modifying, amending or revoking them after due consideration, then the procedural, substantive and jurisdictional requirements of section 1008 are meaningless. By making section 1008 expressly jurisdictional, the Legislature clearly intended to prevent courts from modifying, amending or revoking prior orders without due reconsideration. Ignoring (i.e., implicitly revoking) interim orders, such as the prior stay order, undermines the legislative intent behind section 1008, subdivision (e)." (*Id.* at pp. 492-493.)

The leading published opinions in this appellate district, all from Division Two, have expressly followed *Morite* in affirming that section 1008 is both jurisdictional and the exclusive procedural means for renewal of a previously denied motion or reconsideration of an interim order. (*Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 669-670 [73 Cal.Rptr.2d 242] (*Pazderka*) [trial court had no jurisdiction to grant motion for reconsideration of attorney fees award in absence of showing of new and different facts and satisfactory explanation for failure to present such new facts at the time of first motion]; *Baldwin, supra,* 59 Cal.App.4th at pp. 1194-1201 [trial court acted in excess of jurisdiction in granting motion for reconsideration of attorney fees award where party moving for reconsideration failed to present any new or different law that could not have been cited in the original motion]; *Garcia v. Hejmadi, supra,* 58 Cal.App.4th at pp. 679-681, 685-691 [trial court lacked jurisdiction to vacate earlier grant of summary judgment under § 1008 because movant failed to present newly discovered evidence or a satisfactory explanation for failing to provide the mistakenly omitted evidence earlier]; *Crotty v. Trader* (1996) 50 Cal.App.4th 765, 771 [57 Cal.Rptr.2d 818] [§ 1008 does not give trial court authority to reevaluate or reanalyze facts and authority already presented in the earlier motion]; *Gilberd v. AC Transit* (1995) 32 Cal.App.4th 1494, 1498-1502 [38

Cal.Rptr.2d 626] [§ 1008 is jurisdictional, and "the exclusive avenue" for reconsideration of interim court orders "whether initiated by a party of the court itself"; trial court acted in excess of jurisdiction when it granted motion for reconsideration of earlier order denying motion for summary judgment without an adequate showing of new or different facts, circumstances or law].)[14]

More recently, several courts have reconsidered and rejected this line of authority, concluding that to the extent it restricts a trial court's inherent power to reconsider and correct its own interim rulings, section 1008 may be unconstitutional. (See *Wozniak v. Lucutz* (2002) 102 Cal.App.4th 1031, 1042 [126 Cal.Rptr.2d 310] (*Wozniak*) [Second Dist., Div. Seven; "[w]e choose to follow that line of cases which recognizes that . . . section 1008 notwithstanding, the trial court retains the ability to reconsider its interim rulings and to change those rulings at any time prior to entry of judgment"]; *Remsen v. Lavacot* (2001) 87 Cal.App.4th 421, 426 [104 Cal.Rptr.2d 612] (*Remsen*) [Fourth Dist., Div. Three; "the court's inherent power to correct its own rulings is based on the California Constitution and cannot be impaired by statute"]; *Case v. Lazben Financial Co., supra,* 99 Cal.App.4th at pp. 178-179 [Second Dist., Div. Three; trial court's inherent authority to reconsider its own earlier ruling sua sponte is derived from the California Constitution, and its jurisdiction to do so cannot be impaired by § 1008]; *Kollander, supra,* 98 Cal.App.4th at pp. 310-314 [Second Dist., Div. Four; courts have inherent constitutional power to control their order and business, including the power to correct their own interim rulings]; *Darling, Hall & Rae v. Kritt* (1999) 75 Cal.App.4th 1148, 1156 [89 Cal.Rptr.2d 676] (*Darling*) [Second Dist., Div. Seven; "section 1008 does not govern the court's ability, on its own motion, to reevaluate its own interim rulings," and "trial court retains the inherent authority to change its decision at any time prior to the entry of judgment"]; *People v. Castello* (1998) 65 Cal.App.4th 1242, 1246-1250 [77 Cal.Rptr.2d 314] [Fourth Dist., Div. One; a court has broad power, inherent in the California Constitution, to rehear, reconsider and correct its own interim rulings, and § 1008 cannot impair the exercise of this inherent power].)[15]

Several of these cases have distinguished between a trial court's inherent power to reconsider and correct its own prior rulings sua sponte, and the

---

[14]Division Two of this court is not alone in following this line of authority by enforcing the statutory procedures and requirements set out in section 1008 as the jurisdictionally exclusive means of obtaining reconsideration of interim trial court orders or renewing previously denied motions. Similar reported decisions from other courts include *Wilson v. Science Applications Internat. Corp.* (1997) 52 Cal.App.4th 1025, 1031-1033 [60 Cal.Rptr.2d 883] (Fourth Dist., Div. One); *Lucas v. Santa Maria Public Airport Dist.* (1995) 39 Cal.App.4th 1017, 1027-1028 [46 Cal.Rptr.2d 177] (Second Dist., Div. Six).

[15]In *People v. Castello, supra,* 65 Cal.App.4th 1242, Division One of the Fourth Appellate District relied in part on the 1996 case of *Gailing v. Rose, Klein & Marias* (1996) 43 Cal.App.4th 1570, 1579 [51 Cal.Rptr.2d 381] (*Gailing*). In *Gailing,* the Fourth District, Division Three held broadly that "[t]he provisions of section 1008 are not jurisdictional" and

limitations imposed by section 1008 on the ability of *parties* to bring motions for reconsideration or to renew an application for an order previously denied. Thus, in *Darling, supra,* 75 Cal.App.4th 1148, the same division of the Second Appellate District that had issued the decision in *Morite* six years earlier held that section 1008 does not govern a trial court's inherent authority and jurisdiction to reevaluate its own interim rulings *on its own motion,* and can only be understood to apply to motions for reconsideration brought by litigants. In *Darling,* the trial court had initially denied the plaintiff's motions for summary judgment. Subsequently, upon its own rereading and reconsideration of papers previously filed with the motions, it vacated its own earlier ruling and granted summary judgment. (*Darling, supra,* 75 Cal.App.4th at pp. 1150-1154.) On appeal, the defendant argued the trial court had acted in excess of its jurisdiction under section 1008. The *Darling* court considered and found inapplicable the line of cases from Division Two of this appellate district holding section 1008 jurisdictional, reasoning instead that because a trial court has inherent constitutional power to change its decision at any time before entry of judgment, section 1008 cannot govern the court's jurisdiction or authority, on its own motion, to reevaluate and change its own interim rulings at any time before entry of judgment.[16] On this basis the appellate court upheld the trial court's jurisdiction to reconsider and grant sua sponte a motion for summary judgment it had previously denied, even in the absence of new facts or law. (*Darling,* at pp. 1155-1156; see also *People v. Castello, supra,* 65 Cal.App.4th at pp.

"[t]he trial court has broad discretion to hear a renewed motion, even if prerequisites of the section are not met." (*Gailing, supra,* 43 Cal.App.4th at p. 1579.) This holding, made without any analysis or discussion, was in turn based entirely on the sole case authority cited in its support, the decision of Division Five of this district in *People ex rel. Dept. of Transportation v. Ad Way, Inc.* (1992) 8 Cal.App.4th 309, 313-314 [11 Cal.Rptr.2d 407]. However, the latter decision was based on the terms of section 1008 before the 1992 amendments thereto. Those amendments were specifically designed to make clear the Legislature's intention that the procedures set forth in section 1008 be construed as jurisdictional and the exclusive means for modifying, amending or revoking prior interim orders. Prior to that time, section 1008 did not purport to be jurisdictional, or to impose exclusive procedural requirements for such motions and orders. (*Case v. Lazben Financial Co., supra,* 99 Cal.App.4th at p. 180; *Kollander, supra,* 98 Cal.App.4th at p. 310; *Garcia v. Hejmadi, supra,* 58 Cal.App.4th at pp. 685-686; *Gilberd v. AC Transit, supra,* 32 Cal.App.4th at pp. 1499-1501; *Morite, supra,* 19 Cal.App.4th at pp. 490-493.) Thus, we cannot consider *Gailing* as relevant to our analysis.

[16]"We find this line of cases holding Code of Civil Procedure section 1008 is jurisdictional to be inapplicable because section 1008 does not govern the court's ability, on its own motion, to reevaluate its own interim rulings. [Citation.] Instead, the trial court retains the inherent authority to change its decision at any time prior to the entry of judgement. [Citation.] Section 1008 is designed to conserve the court's resources by constraining litigants who would attempt to bring the same motion over and over. On the other hand, these same judicial resources would be wasted if the court could not, on its own motion, review and change its interim rulings. [Citation.] Therefore, the only requirement of the court is that it exercise 'due consideration' before modifying, amending, or revoking its prior orders. [Citation.]" (*Darling, supra,* 75 Cal.App.4th at pp. 1156-1157.)

1247-1249 & fn. 5 [§ 1008, "by its express terms, governs only a litigant's ability to renew a motion or advance an application, not the court's inherent power to reconsider its own interim rulings"]; *In re Jamika W.* (1997) 54 Cal.App.4th 1446, 1450 [63 Cal.Rptr.2d 513] [§ 1008 did not affect trial court's jurisdiction to vacate prior order setting juvenile petition for hearing because it "was not acting on a motion for reconsideration, but was correcting an erroneous ruling"]; *Bernstein v. Consolidated American Ins. Co.* (1995) 37 Cal.App.4th 763, 774 [43 Cal.Rptr.2d 817] (*Bernstein*), disapproved on other grounds in *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 841, fn. 13 [88 Cal.Rptr.2d 366, 982 P.2d 229] [Second Dist., Div. Five; § 1008 does not preclude trial court's inherent power to correct, on its own motion, its own prior ruling erroneously denying summary adjudication; reconsideration upheld because "court was not entertaining a motion [by a party] for reconsideration of the prior ruling, but was correcting an erroneous ruling on its own motion"].)

Since *Darling*, however, at least two appellate courts have gone further and rejected the distinction between a court's reevaluation of its interim orders upon its own motion, versus such a reconsideration upon the motion of the parties. In *Remsen, supra,* 87 Cal.App.4th 421, the trial court had originally ruled that trust beneficiaries were entitled to interest on their bequests. Upon the motion of the trustees for reconsideration, the court later modified the order to hold the reverse. Acknowledging that the trustee's motion for reconsideration of the prior order was on its face in violation of section 1008 because it was not based on new or different facts, circumstances or law, the *Remsen* court nevertheless affirmed the trial court's modification and reversal of its own interim order upon the trustee's motion. Division Three of the Fourth Appellate District specifically held that section 1008 could not restrict the trial court's inherent power to reconsider and change its own interim ruling even though it did so upon the motion of a litigant, rather than upon its own motion sua sponte. (*Remsen, supra,* 87 Cal.App.4th at pp. 424-427.)[17] Similarly, when Division Seven of the Second Appellate District revisited this issue recently in *Wozniak, supra,* 102

---

[17]"The Remsens are correct that Code of Civil Procedure section 1008 was not followed. Whether a motion for reconsideration (§ 1008, subd. (a)) or renewal (§ 1008, subd. (b)), the statute requires it to be based on new or different facts, circumstances or law. The motion to reconsider here was not. Notwithstanding section 1008, however, the court retained its inherent jurisdiction to modify interim orders. . . . [T]he court's inherent power to correct its own rulings is based on the California Constitution and cannot be impaired by statute. [¶] . . . [¶] The Remsens claimed at oral argument that the *Darling* case does not control here because the judge was not acting sua sponte but reconsidered in response to a litigant's motion. We find this to be a distinction without a difference. Whether the trial judge has an unprovoked flash of understanding in the middle of the night or is prompted to rethink an issue by the stimulus of a motion is 'constitutionally immaterial' to the limitation on the power of the Legislature to regulate the judiciary. [Citation.]" (*Remsen, supra,* 87 Cal.App.4th at pp. 426-427.)

Cal.App.4th 1031, it expressly followed *Remsen* to hold that "it is irrelevant whether the court acts sua sponte or pursuant to a party's motion . . . . In either case, the ability of the trial court to correct what it perceives to be an incorrect interim ruling can only further the policy of conserving judicial resources." (*Id.* at p. 1042; cf. *Kollander, supra,* 98 Cal.App.4th at pp. 312-313.)

▮ We agree with the principle enunciated in *Darling, People v. Castello,* and their progeny that trial courts have the inherent power to reconsider and correct their own interim decisions in order to achieve substantial justice. (*Phillips v. Phillips* (1953) 41 Cal.2d 869, 874 [264 P.2d 926] [trial court may change its decision on law or facts at any time before judgment is entered]; *Harth v. Ten Eyck* (1941) 16 Cal.2d 829, 833-834 [108 P.2d 675] [trial court had power to change previous order to serve the ends of justice, subject to review for abuse of discretion]; *Bernstein, supra,* 37 Cal.App.4th at p. 774 [same]; *Nave v. Taggart* (1995) 34 Cal.App.4th 1173, 1177 [40 Cal.Rptr.2d 714] [same]; *Ziller Electronics Lab GmbH v. Superior Court* (1988) 206 Cal.App.3d 1222, 1232 [254 Cal.Rptr. 410] (*Ziller*) [a trial court has jurisdiction "to reconsider and correct its erroneous interim rulings to achieve justice"].) It is clear to us that this power is derived from the California Constitution. (Cal. Const., arts. III, § 3, IV, § 1, V, § 1, VI, § 1 [providing for legislative, executive and judicial branches of government]; *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 557 [117 Cal.Rptr.2d 168, 41 P.3d 3]; *People v. Bunn* (2002) 27 Cal.4th 1, 14-16 [115 Cal.Rptr.2d 192, 37 P.3d 380]; *Case v. Lazben Financial Co., supra,* 99 Cal.App.4th at pp. 183-185.)

Although the Legislature may enact statutes regulating the inherent powers of the courts, it may not do so in a way that would defeat or materially impair the courts' exercise of their core constitutional powers and functions. (*People v. Bunn, supra,* 27 Cal.4th at pp. 14-16; *Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 52, 58-59 [51 Cal.Rptr.2d 837, 913 P.2d 1046].) To the extent section 1008 bars trial courts from sua sponte reconsidering their own interim orders and decisions, it clearly hinders the core power of the judiciary to decide and resolve controversies between litigants. We agree with Division Three of the Second Appellate District that "if interpreted to eliminate a court's jurisdiction to reconsider its interim orders on its own motion, section 1008 violates the separation of powers doctrine embodied in the California Constitution." (*Case v. Lazben Financial Co., supra,* 99 Cal.App.4th at p. 185.)[18] Consequently, we hold that the separation

---

[18]"Interpreted [as barring a trial court from reconsidering its own orders sua sponte], section 1008 would emasculate the judiciary's core power to decide controversies between parties. The legislative restriction of a court's ability to sua sponte reconsider its own rulings

of powers doctrine precludes an interpretation of section 1008 that would deprive a trial court of jurisdiction to reconsider its own interim orders sua sponte.

Nevertheless, we must also conclude that by eliminating the distinction between a trial court's action taken sua sponte and that made in response to a litigant's motion, the more recent cases such as *Remsen* and *Wozniak* go too far toward eviscerating the clear jurisdictional language of section 1008, essentially rendering the provisions of the statute meaningless. We are constrained by two essential principles of statutory interpretation. ■ First, in order to avoid encroaching on the legislative function, we may not simply disregard the language of a statute in defiance of the clear intent and policy judgments of the Legislature. (*Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 661 [47 Cal.Rptr.2d 108, 905 P.2d 1248]; *Kollander, supra,* 98 Cal.App.4th at p. 313; *Razeto v. City of Oakland* (1979) 88 Cal.App.3d 349, 351 [151 Cal.Rptr. 791].) Second, if and when possible, a legislative enactment must be construed in such a way as to preserve its constitutionality. (*Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 129 [96 Cal.Rptr.2d 485, 999 P.2d 718]; *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323]; *Case v. Lazben Financial Co., supra,* 99 Cal.App.4th at p. 188; *Kollander, supra,* 98 Cal.App.4th at p. 313; *Rowe v. Superior Court* (1993) 15 Cal.App.4th 1711, 1722 [19 Cal.Rptr.2d 625].)[19]

■ Applying these principles, we conclude that section 1008 may reasonably be construed as intended to regulate the actions of parties to a

is not merely a reasonable regulation on judicial functions. Instead, such a restriction would directly and materially impair and defeat the court's most basic functions, exercising its discretion to rule upon controversies between the parties and ensuring the orderly administration of justice. Courts are empowered to decide controversies, a power derived from the state constitution. We are hard pressed to conceive of a restriction that goes more directly to the heart of a court's constitutionally mandated functions. Under [this statutory] reading, if a court realizes it has misunderstood or misapplied the law, it is prohibited from revisiting its ruling, whether it realizes its mistake 10 minutes or 10 days later, and no matter how obvious its error or how draconian the effects of its misstep. 'A court could not operate successfully under the requirement of infallibility in its interim rulings. Miscarriage of justice results where a court is unable to correct its own perceived legal errors . . . .' [Citation.]" (*Case v. Lazben Financial Co., supra,* 99 Cal.App.4th at p. 185.)

[19]"[A] court must, whenever possible, construe a statute so as to preserve its constitutional validity. [Citations.]" (*Kraus v. Trinity Management Services, Inc., supra,* 23 Cal.4th at p. 129.) " 'If "the terms of a statute are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the Constitution." [Citations.] Consequently, "[i]f feasible within bounds set by their words and purposes, statutes should be construed to preserve their constitutionality." [Citation.]' [Citation.]" (*Rowe v. Superior Court, supra,* 15 Cal.App.4th at p. 1722.)

civil litigation rather than the inherent powers of the trial court itself.[20] Both the plain language of the statute itself and the uncodified expressions of legislative intent in the original legislation and the Legislative Counsel's Digest consistently refer to "applications" for reconsideration or "renewals" of previous "motions" brought by parties, with no reference whatsoever to restrictions on a trial court's reconsideration of its own orders sua sponte or on its own motion. (Stats. 1992, ch. 460, § 1, p. 1831; Legis. Counsel's Dig., Sen. Bill No. 1805, 4 Stats. 1992 (1991-1992 Reg. Sess.) Summary Dig., p. 165; *Case v. Lazben Financial Co., supra,* 99 Cal.App.4th at pp. 186-187; *People v. Castello, supra,* 65 Cal.App.4th 1248-1249, fn. 5.) "Clearly, trial courts do not make applications, motions, or renewals of motions themselves. The language chosen by the Legislature strongly suggests it intended to restrict the actions of *parties* in bringing motions to reconsider, but did not contemplate restricting the discretion of a trial judge who realizes he or she has erred in making a ruling and wishes to remedy the mistake. This statutory language unambiguously confines the procedural requirements of section 1008 to applications or motions for renewal brought by parties, and does not purport to govern a court's reconsideration of an order on its own motion." (*Case v. Lazben Financial Co., supra,* 99 Cal.App.4th at p. 187.)

We believe that this construction of section 1008 may be reconciled with the reported decisions, largely from Division Two of this court, holding that the requirements of section 1008 are jurisdictional and exclusive. Significantly, all of these cases involved situations in which the disputed reconsideration, modification or reversal of a prior interim order was brought about upon the motion of a party litigant, and not by the trial court acting on its own motion. (*Pazderka, supra,* 62 Cal.App.4th at pp. 664-665, 669-670 [defendant moved for reconsideration of attorney fees award without compliance with § 1008]; *Baldwin, supra,* 59 Cal.App.4th at pp. 1197-1201 [same]; *Garcia v. Hejmadi, supra,* 58 Cal.App.4th at pp. 685-691 [trial court erroneously vacated summary judgment previously granted to defendant upon motion for reconsideration by plaintiff filed without a satisfactory showing of compliance with § 1008]; *Gilberd v. AC Transit, supra,* 32 Cal.App.4th at pp. 1498, 1502 [without complying with § 1008, trial court entered judgment dismissing plaintiff's complaint after granting motion to reconsider previous order granting plaintiff relief]; *Morite, supra,* 19

---

[20]In coming to this conclusion, we are persuaded by the thoughtful and well-reasoned decision of Division Three of the Second Appellate District in *Case v. Lazben Financial Co., supra,* 99 Cal.App.4th 172 (opn. of Aldrich, J.), which comprehensively addresses and convincingly analyzes the vexing problems posed by the language of section 1008 as amended and the conflicting interpretations thereof in the appellate courts of this state. (*Case, supra,* 99 Cal.App.4th at pp. 178-189.) To the extent our opinion conflicts with the holdings or analyses in *Remsen, supra,* 87 Cal.App.4th 421, *Wozniak, supra,* 102 Cal.App.4th 1031, and *Kollander, supra,* 98 Cal.App.4th 304, we disagree with those decisions.

Cal.App.4th at pp. 488-492 [without following § 1008, trial judge set insurance coverage action for trial after insurer asked the judge to do so in status conference statement, despite previous order entered by different judge staying that action pending disposition of underlying wrongful termination case].)[21] None of these cases addressed the specific question of whether and to what extent section 1008 may impair a trial court's inherent constitutional power sua sponte to reconsider, correct and change its own interim decisions.

In sum, and construing the language section 1008 in a manner consistent with the requirements of the California Constitution, we hold that the procedural prerequisites set forth for reconsideration of orders and renewal of motions previously denied are jurisdictional as applied to the actions of parties to civil litigation. As applied to the circumstances of this case—in which Judge Zuniga's previous denial of summary judgment was clearly put in issue not on the trial court's own motion but instead by the parties' cross-motions for summary judgment and, more specifically, respondent's verbatim reapplication for summary judgment—the provisions of section 1008 were jurisdictional and controlling.

■ On this record, then, we conclude that appellant's jurisdictional argument is meritorious. The undisputed record shows there were no new facts, circumstances or legal authorities cited in respondent's renewed motion for summary judgment filed in April 2000 which it had not previously presented in its original motion of July 1999. Significantly, respondent's original motion for summary judgment before Judge Zuniga specifically cited the same two Policy exclusions for intentional and illegal acts upon which Judge Kolin subsequently based his decision granting the motion. Respondent gave no satisfactory explanation whatsoever for its failure to offer any new facts, circumstances or law, much less for its resubmission of the identical motion before a different judge. On their face, it is difficult to distinguish respondent's proceedings below from the kind of brazen forum shopping section 1008 is specifically intended to bar. (*Case v. Lazben Financial Co., supra,* 99 Cal.App.4th at pp. 186-188.) We hold the trial court was jurisdictionally barred from considering respondent's renewed motion for summary judgment, because it was not in compliance with the requirements of section 1008.

---

[21]Although the decisions in both *Morite* and *Gilberd v. AC Transit* contain language broadly stating that section 1008 "governs motions for reconsideration, by parties or the court itself" (*Morite, supra,* 19 Cal.App.4th at p. 490; *Gilberd v. AC Transit, supra,* 32 Cal.App.4th at p. 1499 ["[s]ection 1008 governs reconsideration of court orders whether initiated by a party or the court itself"]), in both cases the actual facts and appellate court analyses make it clear that the disputed trial court actions vacating or reversing previous orders were instigated by the requests or motions of parties, and not by the respective trial courts themselves acting sua sponte.

■ Respondent nevertheless urges that, even if its renewed motion for summary judgment was in technical violation of section 1008, under the particular facts and circumstances presented here the trial court did not err in entertaining and granting it. Its argument may be summarized as follows. Unlike the situation addressed by the opinions of this court upon which appellant relies, the renewed motion for summary judgment in this case was not made as a motion for reconsideration in a law and motions context prior to trial. Instead, it was made at the outset of trial, after the parties had waived a jury, and before the trial judge who would actually be trying the case. The motion was made on the mixed legal and factual issues of coverage that the trial court itself of necessity had to address and decide before proceeding to any other determinations of liability. Thus, respondent contends, its renewed application was not so much an attempt to obtain reconsideration of the earlier denial of summary judgment by circumventing the requirements of section 1008, as it was a kind of motion for nonsuit or for judgment made at the outset of trial on the very issues which the court was required to decide anyway. That these issues of coverage were the same ones embraced by the earlier motion for summary judgment itself was the necessary result of the trial court's previous *denial* of that motion, a denial that required those issues to be decided at trial. Had the trial court denied or refused to consider respondent's renewed motion for summary judgment, it would only have been putting off for a few days a determination it would be required to make shortly thereafter. In practical effect, respondent argues, this appeal is thus not from a trial court order undoing an earlier interim order without compliance with the statutory requirements for such a reconsideration, but from the final disposition of the case. (Cf. *Gilberd v. AC Transit, supra,* 32 Cal.App.4th at pp. 1502-1503, fn. 4 [remedy for any substantive error in the trial court's original ruling denying summary judgment lies in an appeal from the final disposition of the case].)

Despite the surface appeal of respondent's argument, it ultimately founders on the actual record. At the point the parties submitted their cross-motions for summary judgment on the issue of coverage under the Policy, Judge Kolin was prepared to try that issue as a matter of law. The fact that Judge Zuniga had previously ruled there were triable issues of material fact connected with coverage did not change Judge Kolin's responsibility to decide those triable issues himself; to the contrary, because the earlier decision clearly stated that underlying facts were in dispute, the trial court was *required* to make a determination of those issues at trial. Yet it was precisely the issues identified in the trial court's earlier order that Judge Kolin's decision did *not* address.

Thus, the earlier denial of respondent's first motion for summary judgment was based on Judge Zuniga's express finding that there were triable

issues of fact regarding D.'s mental capacity and sanity. The existence of these disputed facts prevented a decision on the issues of coverage and duty to defend in the summary judgment context. Yet Judge Kolin's subsequent order granting the identical motion—resubmitted on the eve of trial—did not even *mention* these factual issues, much less decide them. Nor could it, since the trial court never had the opportunity to weigh the credibility of the parties' conflicting evidence on this issue by hearing testimony and argument. By the same token, the order granting summary judgment did not address or analyze the controlling decisional law on the effect of cognitive incapacity on willfulness and intent for purposes of insurance coverage, and the impact of that law on the facts of this case. (*J. C. Penney Casualty Ins. Co. v. M. K., supra,* 52 Cal.3d at pp. 1019-1025; *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 879-887 [151 Cal.Rptr. 285, 587 P.2d 1098]; *Jacobs v. Fire Ins. Exchange, supra,* 36 Cal.App.4th at pp. 1261, 1268-1275; *Shell Oil Co. v. Winterthur Swiss Ins. Co., supra,* 12 Cal.App.4th at pp. 740-743.)

Although respondent now asserts we should uphold the grant of summary judgment because Judge Zuniga's denial of the motion for summary judgment "erroneously" gave "undue emphasis to the role an alleged insanity might play in determining liability insurance coverage," this very argument simply serves to underscore the trial court's complete failure even to address this precise issue. Moreover, one trial judge may not reconsider and overrule the previous interim ruling of a predecessor judge of the same court by the expedient of simply ignoring the existence of that prior ruling. Not only would such a procedure render inoperative the procedural, substantive and jurisdictional requirements of section 1008, but it would completely undermine "the general rule that one trial court judge may not reconsider and overrule an interim ruling of another judge." (*Ziller, supra,* 206 Cal.App.3d at p. 1232; see *Morite, supra,* 19 Cal.App.4th at pp. 492-493.)

In short, the grant of respondent's second motion for summary judgment cannot be upheld by the simple expedient of construing it as a grant of nonsuit or judgment on the merits. There was never any trial on the specific triable issues of material fact identified by the trial court's earlier order denying summary judgment. The trial court did not even purport to address those issues at all; for all intents and purposes it simply ignored them. The only practical interpretation of the trial court's order granting respondent's second motion for summary judgment was that it was simply a reversal of the earlier order by a different judge denying the identical motion upon reconsideration thereof, and not a final determination on the merits of the disputed factual issues identified in that earlier order. Section 1008 bars the reconsideration of an earlier order denying summary judgment under the

circumstances presented here. As such, the order granting summary judgment was in violation of section 1008 and in excess of the trial court's jurisdiction. (*Baldwin, supra,* 59 Cal.App.4th at pp. 1194-1201; *Garcia v. Hejmadi, supra,* 58 Cal.App.4th at pp. 679-691; *Gilberd v. AC Transit, supra,* 32 Cal.App.4th at pp. 1498-1501.)[22]

## SUBSTANTIVE ERROR

Aside from the procedural and jurisdictional issues of its noncompliance with section 1008, the trial court's grant of summary judgment upon respondent's second motion also suffered from substantive errors which would independently require reversal. Because we must remand for further proceedings, we now address those issues for the guidance of the trial court.

■ In granting summary judgment, the trial court relied first on the Policy exclusion for "any illegal act commited [*sic*] by or at the direction of an insured" in determining "as a matter of law" that D.'s stabbing of appellant was "an illegal act" for which insurance coverage was precluded. Under the recent decisional authority of our Supreme Court, this determination can no longer stand: In *Safeco Ins. Co. v. Robert S., supra,* 26 Cal.4th 758, the Supreme Court concluded that an insurance policy provision excluding coverage for an "illegal act"—for all intents and purposes identical to the one at issue in this case—was unenforceable under the controlling principles for the construction and interpretation of insurance contracts. The Supreme Court found the phrase "illegal act" may reasonably be construed either broadly to mean an act prohibited by any law, whether civil or criminal; or more narrowly, to imply a violation of criminal law only. On this basis, the Supreme Court concluded the exclusion was inherently ambiguous and incapable of being given any enforceable meaning. The court

---

[22]As previously noted, on this appeal respondent does not raise the fact of the parties' alleged "stipulation" to file cross-motions for summary judgment; nor does it argue that the requirements of section 1008 were either met or avoided by that stipulation. That issue may therefore be regarded as having been waived.

In any event, because the requirements of section 1008 are *jurisdictional* with respect to applications by civil parties litigant for reconsideration of previous orders or renewing previously denied motions, any action by the trial court on such an application not in compliance with the dictates of section 1008 would be in excess of its jurisdiction. (*Case v. Lazben Financial Co., supra,* 99 Cal.App.4th at pp. 185-188; *Baldwin, supra,* 59 Cal.App.4th at pp. 1198-1200; *Garcia v. Hejmadi, supra,* 58 Cal.App.4th at pp. 685-690; *Gilberd v. AC Transit, supra,* 32 Cal.App.4th at p. 1501; *Morite, supra,* 19 Cal.App.4th at pp. 492-493; 2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, §§ 276, 290-292, pp. 840-842, 861-863.) As such, the parties could not confer jurisdiction on the trial court to act in violation of the provisions of section 1008 by consent, stipulation, estoppel or waiver. (See *Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 666-667, 674-675 [125 Cal.Rptr. 757, 542 P.2d 1349]; *Estate of Hanley* (1943) 23 Cal.2d 120, 122-123 [142 P.2d 423, 149 A.L.R. 1250].) In short, the necessity of complying with section 1008 could not be stipulated away by any agreement of the parties, whatever its actual terms.

held, "[i]n short, because the illegal act exclusion cannot reasonably be given meaning under established rules of construction of a contract, *it must be rejected as invalid.* [Citation.]" (*Id.* at p. 766, italics added.) Although this decision of our Supreme Court was issued after the trial court's grant of summary judgment in this case, it must be applied retroactively as a bar to the enforcement of the illegal act exclusion here. (*Garcia v. Hejmadi, supra,* 58 Cal.App.4th at p. 680 [with "rare" exceptions, the "general rule" is that "statutes operate only prospectively, while judicial decisions operate retrospectively"].)

The other basis for the trial court's grant of summary judgment was its apparent determination that D.'s plea of no contest to the charge of attempted murder constituted conclusive evidence of the intentionality of her act of stabbing appellant. The trial court's declaration that D.'s plea was "admissible in this action as an admission" of the crime of attempted murder was, or course, a correct statement of the law. (*Interinsurance Exchange v. Flores, supra,* 45 Cal.App.4th 661, 672 [a plea of nolo contendere is admissible in a subsequent civil action as an admission of the crime].) However, because such a plea "may reflect a compromise or a choice not to undergo prosecution," it is not a *conclusive* admission, and has no collateral estoppel effect. Thus, "it does not necessarily establish the underlying factual matters at issue in the civil litigation." (*Id.* at p. 672.) To the extent the trial court's grant of summary judgment on respondent's motion was based on the assumption that D.'s plea of nolo contendere *by itself* established the intentionality of her act, it was in error. On its face, all D.'s plea meant was that she would not contest the charge of doing the deed. Whether the admitted stabbing was "willful" or "intentional" for purposes of section 533 and the Policy exclusion for intentional acts, however, depends on the resolution of the disputed factual issue of D.'s legal sanity. (*Clemmer v. Hartford Insurance Co., supra,* 22 Cal.3d at pp. 879-887; *Shell Oil Co. v. Winterthur Swiss Ins. Co., supra,* 12 Cal.App.4th at pp. 740-743; *J. C. Penney Casualty Ins. Co. v. M. K., supra,* 52 Cal.3d at pp. 1019-1025; *Jacobs v. Fire Ins. Exchange, supra,* 36 Cal.App.4th at pp. 1261, 1268-1275.) As seen, that issue has not yet been decided by the trial court.

Appellant Not Entitled to Entry of Judgment in Its Favor

Appellant next argues that the trial court's initial order in August 1999 denying respondent's first motion for summary judgment established respondent's duty to defend its insureds as a matter of law, and that this court should therefore direct entry of judgment in appellant's favor. The argument is premised on the well-established principle that the duty to defend arises whenever there is a *potential* for indemnification coverage. (*Gray v. Zurich*

*Insurance Co.* (1966) 65 Cal.2d 263, 276-277 [54 Cal.Rptr. 104, 419 P.2d 168].) Based on this principle, appellant asserts that the trial court's finding of triable issues of material fact on the issue of coverage affirmatively established such a potential for coverage, and with it, the existence of a duty to defend. The contention is without merit.

In the first place, appellant offers no authority for the novel proposition that the *denial* of a defendant's motion for summary judgment can affirmatively require entry of judgment for the plaintiff. At best, appellant points to case authority for the proposition that a duty to defend exists as long as there is any potential for coverage. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 46-47 [65 Cal.Rptr.2d 366, 939 P.2d 766]; *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295, 300-301 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) However, Judge Zuniga's denial of respondent's initial motion for summary judgment established nothing more than the existence of triable issues of material fact to be finally determined at trial. The actual weighing of conflicting evidence by the factfinder is a process which can never take place in the context of a summary judgment motion. Only after the actual process of factfinding takes place can the ultimate issue be decided, i.e., whether the claim was actually covered. If the ultimate decision on that question is negative, then the duty to defend is necessarily also extinguished. Appellant is no more entitled than is respondent to entry of judgment on an issue that at this point remains to be decided.[23]

Turning from appellant's procedural arguments to those of substance, she contends the trial court erred in denying her own motion for summary judgment because respondent failed to demonstrate that the potential for indemnification coverage had been eliminated. In essence, she argues that respondent's duty to defend the M. family was necessarily established by respondent's failure to disprove the potential for coverage under the Policy, based on evidence of D.'s alleged mental disorder or incapacity. This argument, like appellant's argument based on the denial of respondent's motion for summary judgment, ignores the fact there has not yet been any final determination of the disputed factual issues upon which she bases her claim. The evidence of D.'s mental incapacity, whatever its strength, must be weighed against the opposing evidence, if any, respondent may offer.

---

[23]Even if it is ultimately concluded that there is no coverage under the Policy, a residual duty to defend may have existed for some interim period of time based on the mere *potential* for such coverage at that point. (*Buss v. Superior Court, supra,* 16 Cal.4th at pp. 46-47.) Nevertheless, the stipulated settlement between appellant and the M. family specifically reserved to the latter "their rights, demands and causes of action for the actual cost to them of attorneys fees incurred as a result of [respondent's] failure to defend" them in the underlying tort cause of action. In light of this express reservation of rights, any such phantom interim duty to defend can be of little possible value to appellant.

Until that takes place, the issue of respondent's duty to defend simply remains unresolved.

In short, appellant's request for entry of judgment regarding any duty to defend is premature. Until the trial court actually weighs the conflicting evidence on the material factual issues identified in Judge Zuniga's order denying respondent's motion for summary judgment, there can be no final determination of the questions of Policy coverage and respondent's alleged duty to defend thereunder. As seen, the trial court has not yet tried these factual issues.

## DISPOSITION

The superior court lacked jurisdiction either to reconsider the earlier denial of summary judgment on respondent's motion, or to consider and rule upon respondent's reapplication therefor. The order granting respondent's motion for summary judgment is accordingly vacated, the judgment entered thereon is reversed, and the cause is remanded for consideration of the triable disputed issues of material fact identified in the original order denying summary judgment. Respondent shall pay appellant's costs on this appeal.

Corrigan, J., and Parrilli, J., concurred.